[This decision has been published in *Ohio Official Reports* at 92 Ohio St.3d 436.]

THE STATE OF OHIO, APPELLEE, *v*. JACKSON, APPELLANT.

[Cite as *State v. Jackson*, 2001-Ohio-1266.]

*Criminal law—Aggravated murder—Death penalty upheld, when.*

(No. 98-726—Submitted April 24, 2001—Decided August 15, 2001.)

APPEAL from the Court of Common Pleas of Franklin County, No. 97-CR-04-1902.

_____

FRANCIS E. SWEENEY, SR., J.

{¶ 1} Appellant, Kareem Jackson, appeals his conviction of, and death sentence for, the aggravated murders of Antorio Hunter and Terrance Walker.

{¶ 2} The evidence at trial revealed that on the evening of March 24, 1997, appellant and four other individuals decided to rob an apartment in Columbus, Ohio. Appellant and a man called "Little Bee" devised the plan, which called for both men to enter the apartment and purchase drugs. The men would then be joined by two others, Michael Patterson and Derrick Boone, who would enter the apartment armed with guns. Malaika Williamson was put in charge of driving the men to and from the robbery.

{¶ 3} Just past midnight, on March 25, 1997, Malaika Williamson drove the men to the Lupo Court apartment. The victims, Antorio Hunter and Terrance Walker, were inside the apartment with their friends, Nikki Long and Becky Lewis. Long and Walker were in the back bedroom talking when appellant and Little Bee knocked at the door. Hunter answered the door and allowed appellant and Little Bee to enter. Walker came out of the back bedroom, recognized appellant, shook appellant's hand and said, "I haven't seen you in a long time." Appellant and Little Bee then bought some marijuana.

**{¶ 4}** Almost immediately after the purchase, Patterson and Boone burst into the apartment armed with shotguns. The men searched the apartment for drugs and money. Appellant struck Lewis on the head with his handgun, placed a pillow behind her head and threatened to kill her. Lewis begged appellant not to kill her, and appellant refrained from doing so. Appellant led Lewis into the kitchen. Patterson and Little Bee left the apartment, but appellant and Boone remained.

**{¶ 5}** According to Boone's testimony, Walker and Hunter were both lying on the floor. Appellant ordered one of them to crawl beside the other and to lie face down on the floor so that his head was next to the other's. While on the floor, either Hunter or Walker told appellant that he "didn't have no money or weed" and that he wouldn't call the police. Nevertheless, appellant told Boone, "They know my name. I have to kill them." Appellant then grabbed a pillow, hesitated, and shot one of the men in the head. The other, while still lying on the floor, begged for his life, saying, "Please don't kill me. I ain't going to say nothing." Despite his plea, appellant placed a pillow behind the second victim's head. Appellant hesitated again and then shot him in the back of the head.

**{¶ 6}** Following the shootings, appellant and Boone left the apartment and joined the others in the car. Williamson drove the men back to her apartment, where they divided the proceeds from the robbery, which consisted of approximately $40 in cash, $60 worth of marijuana, and a cellular phone.

**{¶ 7}** In the meantime, Long and Lewis, who had heard the gunshots but had not witnessed the shootings, waited in the kitchen until they felt it was safe to leave. They called Hunter's name, and when there was no response, they went into the living room and saw that Hunter and Walker had been shot. The two women, afraid to leave through the front door, fled through a bedroom window. They went into another apartment and called the police.

**{¶ 8}** Officer Andrew Shuster of the Clinton Township Police Department responded to a dispatcher's call at about 12:42 a.m. Upon arriving at the Lupo

Court apartments, the officer found the door to the apartment ajar and discovered the bodies of Hunter and Walker lying face down on the floor just inside the doorway. A cushion with bullet holes was found next to the victims.

{¶ 9} Later that morning, an agent from the Bureau of Criminal Identification and Investigation met with Long, who provided him with enough information to make a composite portrait of Boone using a face kit. Police distributed the sketch of Boone to the sheriff's department and to the media. Soon after the release of the composite, Boone turned himself in to the Franklin County Sheriff's Department.

{¶ 10} Boone cooperated with the police and gave them a statement implicating appellant and the others involved in the shootings. As a result, the police presented Lewis with a photo array lineup, which included a photo of appellant. Lewis positively identified appellant from the photo array lineup as the "guy with the little gun," the person who hit her over the head with the gun during the robbery and threatened to kill her.

{¶ 11} Police then collected physical evidence relating to the shootings. Police retrieved a handgun from Williamson's apartment, which was tested and found to have fired the bullets retrieved from Antorio Hunter. The firearms expert could not conclusively state that the handgun fired the other bullet removed from Terrance Walker. However, this bullet possessed some characteristics matching appellant's handgun, and the bullet was the same caliber as his weapon. Police also searched the apartment appellant shared with his girlfriend, Ivana King, and found a shotgun in a closet and two rifles hidden beneath the molding under the kitchen sink cupboard. Police retrieved nine .38 caliber bullets from the apartment. Police also interviewed Ivana King, who said that appellant had told her that "he [had] done two people."

{¶ 12} Deputy coroners from the Franklin County Coroner's Office performed autopsies on Hunter and Walker. Each coroner concluded that the victims had died from gunshot wounds to the head.

{¶ 13} Appellant was arrested on March 28, 1997, and was subsequently indicted on six counts of aggravated murder for the deaths of Hunter and Walker. Each murder count included two death penalty specifications for multiple murder and murder during an aggravated robbery and/or kidnapping in violation of R.C. 2929.04(A)(5) and (A)(7). Appellant was also charged with four counts of aggravated robbery, four counts of kidnapping, and one count of felonious assault. Each of the fifteen total counts carried a firearm specification.

{¶ 14} At trial, the trial court granted appellant's motion for acquittal on count eight, the aggravated robbery of Lewis. However, the jury found appellant guilty as charged on the remaining counts.

{¶ 15} At the conclusion of the penalty phase, the jury recommended that the court sentence appellant to death. The trial court accepted this recommendation and sentenced appellant accordingly.

{¶ 16} The cause is now before this court upon an appeal as of right.

{¶ 17} Appellant presents seventeen propositions of law for our consideration, which we have considered fully. In addition, we have considered the death penalty for appropriateness and proportionality and we have independently weighed the aggravating circumstances against the evidence presented in mitigation. For the reasons that follow, we affirm appellant's convictions and uphold the sentence of death imposed.

## I. ALTERNATE JURORS' PRESENCE IN DELIBERATIONS

{¶ 18} In proposition of law three, appellant contends that he was deprived of a fair trial under the Sixth and Fourteenth Amendments because the trial judge permitted alternate jurors to remain in the jury room during deliberations. Defense counsel did not object, and in fact expressly stated that he had no objection to their

presence. Therefore, since defense counsel acquiesced to the alternate jurors' presence in deliberations, the alleged error is subject to plain error analysis. As this court has repeatedly emphasized, an error "does not constitute a plain error or defect under Crim.R. 52(B) unless, but for the error, the outcome of the trial clearly would have been otherwise." *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph two of the syllabus.

{¶ 19} Crim.R. 24(F) provides that "[a]n alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict."

{¶ 20} Despite the clear language of Crim.R. 24(F), the trial court instructed the alternate jurors to sit in on the jury deliberations. Specifically, the trial court told the jury in the guilt phase that they "should listen to the deliberations but must not participate in the deliberation[s]. I can't stress that enough. No facial indications, no nodding of heads, no notes back and forth. You have to sit there and listen, and that is all you can do. Okay? Unless and until, if ever, the alternates are called upon to serve as regular jurors."

{¶ 21} Prior to sentencing deliberations, the trial court again allowed alternate jurors to sit in on the deliberations, reminding them that they should "listen to the deliberations but must not participate in the deliberation unless and until, if ever, called upon to serve as regular jurors."

{¶ 22} The trial court clearly erred in failing to abide by the mandates of Crim.R. 24(F) in allowing the alternate jurors to remain present during deliberations. Appellant contends that because of this error, we must presume that he was prejudiced. Although prejudice has been presumed by some courts, see, *e.g., United States v. Virginia Erection Corp.* (C.A.4, 1964), 335 F.2d 868, we are unwilling to presume prejudice in the case at bar.

{¶ 23} Instructive to our analysis is the United States Supreme Court decision of *United States v. Olano* (1993), 507 U.S. 725, 113 S.Ct. 1770, 123

L.Ed.2d 508. In *Olano*, the district court allowed two alternates to be present during jury deliberations, with no objection by defense counsel. The Ninth Circuit Court of Appeals found that the presence of alternates was "inherently prejudicial" and reversible *per se.* 934 F.2d 1425, 1438. The Supreme Court reversed. Although acknowledging that it was error to let alternate jurors attend deliberations, the court nonetheless held that the error did not amount to plain error under the federal standard. The court also found that there was no reason to presume prejudice, refusing to hold that "the mere presence of alternate jurors entailed a sufficient risk of 'chill' to justify a presumption of prejudice on that score." 507 U.S. at 741, 113 S.Ct. at 1781, 123 L.Ed.2d at 524. The court reasoned that "[u]ntil the close of trial, the 2 alternate jurors were indistinguishable from the 12 regular jurors. Along with the regular jurors, they commenced their office with an oath, received the normal initial admonishment, heard the same evidence and arguments, and were not identified as alternates until *after* the District Court gave a final set of instructions. In those instructions, the District Court specifically enjoined the jurors that 'according to the law, the alternates must not participate in the deliberations,' and reiterated, 'we are going to ask that you not participate.' " *Id.* at 740, 113 S.Ct. at 1781, 123 L.Ed.2d at 523. Under those circumstances, the Supreme Court held that the failure to comply with Fed.R.Crim.P. 24(c) was not plain error.

{¶ 24} The same can be said in this case. Appellant has failed to show that he was in fact prejudiced by the presence of the alternate jurors. Therefore, although it was improper for the trial court to instruct the alternate jurors to remain present during deliberations, appellant's argument that he was denied a fair trial lacks merit. See *State v. Murphy* (2001), 91 Ohio St.3d 516, 531-533, 747 N.E.2d 765, 787-790.

{¶ 25} We overrule appellant's third proposition of law.

## II. SUFFICIENCY OF EVIDENCE

{¶ 26} In proposition of law eight, appellant challenges the sufficiency of the evidence to support his conviction for felonious assault. In proposition of law nine, appellant challenges the sufficiency of the evidence to support prior calculation and design, as charged in Counts 1 and 2.

{¶ 27} The relevant inquiry, in reviewing a record for sufficiency, is whether "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.

{¶ 28} Appellant argues that the felonious assault conviction should be set aside because the handgun used to strike Lewis in the head was not used in the manner or purpose for which it was designed.

{¶ 29} R.C. 2903.11(A)(2), which defines "felonious assault," provides:

"(A)  No person shall knowingly * * *:

"* * *

"(2)  Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."

"Deadly weapon" is defined in R.C. 2923.11(A) as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon."

{¶ 30} In this case, there was sufficient evidence to support appellant's felonious assault conviction. Rebecca Lewis testified that appellant struck her over the head with his handgun. As a result of this blow, Lewis fell to her knees bleeding. This evidence establishes the essential elements of the crime of felonious assault under R.C. 2903.11(A)(2) in that a firearm used as a bludgeon is "capable of inflicting death." See *State v. Gaines* (1989), 46 Ohio St.3d 65, 68, 545 N.E.2d

68, 71. Moreover, we have held that the act of pointing a deadly weapon at another and threatening to kill that individual is sufficient evidence to establish the offense of felonious assault. *State v. Green* (1991), 58 Ohio St.3d 239, 569 N.E.2d 1038, syllabus. The evidence here established that appellant committed felonious assault when he placed a pillow behind Lewis's head, pointed the gun at her, and threatened to kill her.

**{¶ 31}** With respect to appellant's challenge regarding prior calculation and design, appellant contends that the shootings took place as a result of a spontaneous act, with no break in the sequence of events. Furthermore, appellant says there was a plan to rob but not to kill. Therefore, appellant maintains that his convictions under Counts 1 and 2 for aggravated murder should be set aside.

**{¶ 32}** There is no bright-line test to determine whether prior calculation and design is present. *State v. Taylor* (1997), 78 Ohio St.3d 15, 20, 676 N.E.2d 82, 89. Instead, each case must be decided on a case-by-case basis. *Id.* In *State v. Cotton* (1978), 56 Ohio St.2d 8, 10 O.O.3d 4, 381 N.E.2d 190, syllabus, we held that "[w]here evidence adduced at trial reveals the presence of sufficient time and opportunity for the planning of an act of homicide to constitute prior calculation, and the circumstances surrounding the homicide show a scheme designed to implement the calculated decision to kill, a finding by the trier of fact of prior calculation and design is justified."

**{¶ 33}** The evidence presented in this case meets these criteria. Appellant's decision to kill Hunter and Walker was not a spur-of-the moment shooting, as appellant contends. Instead, after completing the robbery, appellant made the conscious decision to shoot the victims execution-style, realizing that the victims recognized him. Before shooting them, appellant took the time to retrieve a pillow from the couch and place it behind each victim's head. Appellant then hesitated, and finally pulled the trigger.

{¶ 34} Appellant's decision to carry out execution-style killings required thought on appellant's part. Moreover, sufficient time, reflection, and activity were involved to satisfy the elements of proof that the shootings were done with prior calculation and design. See, *e.g.*, *State v. Goodwin* (1999), 84 Ohio St.3d 331, 343-345, 703 N.E.2d 1251-1263; *State v. Campbell* (2000), 90 Ohio St.3d 320, 738 N.E.2d 1178, where we held that prior calculation and design can exist in an execution-style killing where the defendant fires shots at close range into a victim's head. In reviewing the record before us, we find that there was sufficient evidence presented to support the jury's determination of prior calculation and design.

{¶ 35} Appellant's eighth and ninth propositions of law are without merit.

## III. PROSECUTORIAL MISCONDUCT

{¶ 36} In his sixth, seventh, and fourteenth propositions of law, appellant alleges instances of prosecutorial misconduct, in both the guilt and penalty phases of the trial. The test for prosecutorial misconduct is whether the conduct complained of deprived the defendant of a fair trial. *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 24, 514 N.E.2d 394, 400. For the reasons that follow, we find that none of the errors complained of constitutes reversible error.

### A. Improper questioning in guilt phase

{¶ 37} In proposition of law six, appellant argues that the prosecutor acted improperly while questioning the state's firearms expert. The firearms expert testified that the bullet recovered from Hunter's body was fired from appellant's gun. After he gave this opinion, the prosecutor asked the witness the following questions:

"Q. Sir, these conclusions that you have arrived at, are there other people in your field here in the state of Ohio?

"A. Yes, sir, there are.

"Q. Could your work be double-checked if it was felt to be necessary?

"A. Yes, sir, it could be."

{¶ 38} Appellant argues that the prosecutor improperly bolstered the expert's opinion by asking if his work could be double-checked. We disagree. This line of questioning is permissible to show that the expert's opinion went unchallenged. As stated in *State v. Williams* (1986), 23 Ohio St.3d 16, 20, 23 OBR 13, 17, 490 N.E.2d 906, 911, "[t]he prosecution is not prevented from commenting upon the failure of the defense to offer evidence in support of its case." Furthermore, defense counsel did not object to these questions. Therefore, even if it had been improper, there was no plain error.

### B. Improper comments in penalty phase

{¶ 39} Appellant also contends in proposition of law fourteen that the prosecutor erred in the penalty phase by improperly referring to the nature and circumstances of the offense as aggravating circumstances and in misleading the jury on the statutory weighing process. Specifically, appellant contends that the prosecutor informed the jury that appellant shot the two victims "to increase his chances of getting away with an aggravated robbery. * * * Those are the aggravat[ing] circumstances in this case that you found back at the trial phase."

{¶ 40} Although a prosecutor may argue that the aggravating circumstances the defendant was found guilty of outweigh the mitigation evidence, any use of the term "aggravating circumstances" must be limited to statutory aggravating circumstances set forth in R.C. 2929.04(A)(1) through (8) that have been charged and proved beyond a reasonable doubt. *State v. Wogenstahl* (1996), 75 Ohio St.3d 344, 662 N.E.2d 311, paragraph one of the syllabus. Appellant was never charged with the aggravated murder specification under R.C. 2929.04(A)(3), *i.e.*, committing murder for the purpose of escaping apprehension for another offense. The prosecutor erred in making these comments to the jury. However, defense counsel failed to object to these comments. Since we find that the prosecutor's improper comments did not alter the outcome of the case, the error complained of does not rise to the level of plain error. Moreover, our independent reassessment

of the sentence can cure the misstatements made by the prosecutor. *State v. Combs* (1991), 62 Ohio St.3d 278, 286, 581 N.E.2d 1071, 1079.

{¶ 41} Furthermore, we do not find any error in the prosecutor arguing to the jury that they should give little weight to appellant's upbringing as a mitigating factor. We have held that a prosecutor can freely argue that "defense mitigation evidence is worthy of little or no weight." *State v. Wilson* (1996), 74 Ohio St.3d 381, 399, 659 N.E.2d 292, 309. Therefore, these remarks were not improper.

C. Intimidation and coercion of defense witness

{¶ 42} In his seventh proposition of law, appellant contends that the prosecutor committed misconduct and deprived him a fair trial by threatening, coercing, and intimidating a defense witness, Michael Patterson, into refusing to testify on appellant's behalf. In particular, appellant maintains that the state prevented Patterson from telling the truth about what happened the night of the shootings.

{¶ 43} Patterson, one of defendant's accomplices, had provided the police with a statement admitting his involvement in the robbery. Patterson entered into a plea agreement where he agreed to cooperate with the prosecution and be truthful in his testimony. Subsequently, Patterson sent appellant a letter stating that he wanted to tell the state the truth about the matter. When the prosecutor learned about this, he told Patterson that his plea bargain could be set aside. Patterson ultimately refused to talk to appellant's defense counsel, saying that he would invoke the Fifth Amendment if called to testify at trial.

{¶ 44} The record does not support the contention that the state coerced or threatened Patterson into not testifying for the defense. In fact, defense counsel advised the trial court that, for tactical reasons, it did not intend to call Patterson as a witness because Patterson said that he would invoke the Fifth Amendment. When alerted that there was "a potential problem," the prosecutor met with Patterson and Patterson refused to discuss the case. The prosecutor informed Patterson that his

lack of cooperation could lead to the revocation of the plea agreement. There is no indication that the state threatened or prevented Patterson from testifying, as appellant asserts. In this case, the prosecutor simply reiterated the terms of Patterson's plea agreement and did not commit prosecutorial misconduct or deprive appellant of a fair trial by his actions.

{¶ 45} We reject appellant's sixth, seventh, and fourteenth propositions of law.

## IV. ADMISSIBILITY OF EVIDENCE

{¶ 46} In proposition of law ten, appellant claims that the trial judge erred by admitting certain weapons into evidence, over defense counsel's objection, since the weapons (a shotgun and a rifle) were not tied to the murders and robberies.

{¶ 47} Evid.R. 401 provides:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

"The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, paragraph two of the syllabus. We find that the trial court did not abuse its discretion in admitting these weapons into evidence.

{¶ 48} Malaika Williamson testified that when she picked up appellant and Boone on the way to the robbery, they brought out "two long guns" and placed them in the trunk of the getaway car. Boone testified that he later saw one of the shotguns in a closet at appellant's apartment. Based upon this information, police searched the apartment and found a shotgun in the closet, and two additional long rifles, which were hidden behind the molding under the kitchen sink. Boone, as well as other witnesses, testified that two long guns were used in the robbery, although they were never fired. The guns retrieved from the apartment matched

this description and were admissible as guns likely used during the robbery. The trial court properly admitted these weapons into evidence.

{¶ 49} We overrule proposition of law ten.

## V. JURY INSTRUCTIONS

{¶ 50} Appellant challenges two jury instructions in the guilt phase of the trial and one jury instruction in the penalty phase. Because appellant failed to object to these instructions, he has waived all but plain error. *State v. Underwood* (1983), 3 Ohio St.3d 12, 3 OBR 360, 444 N.E.2d 1332, syllabus.

{¶ 51} In proposition of law eleven, appellant argues that the trial court erred in instructing the jury on prior calculation and design. The court charged the jury as follows on this issue:

"A person acts with prior calculation and design when, by engaging in a distinct process of reasoning, that person forms a purpose to kill and plans the method intended to be used to cause death. The circumstances surrounding the homicide must show a scheme designed to carry out the calculated decision to cause the death. No definite period of time must elapse and no particular amount of consideration must be given, but acting on the spur of the moment or after momentary consideration of the purpose to cause the death is not sufficient."

{¶ 52} Appellant contends that the instruction is improper because it failed to convey to the jury that there must be a planned scheme designed to implement a calculated decision to kill. This argument lacks merit. The instruction properly advised the jury that there must be "a scheme designed to carry out the calculated decision to cause death" and that "acting on the spur of the moment or after momentary consideration" is insufficient. The charge was appropriate. See *State v. Pierce* (1980), 64 Ohio St.2d 281, 286-287, 18 O.O.3d 466, 469-470, 414 N.E.2d 1038, 1042, where we upheld a similar jury instruction on prior calculation and design.

**{¶ 53}** In proposition of law twelve, appellant challenges the court's instruction on "purpose." The court instructed the jury that "[a] person acts 'purposely' when it is the specific intention to cause a certain result. To do an act purposefully is to do it intentionally and not accidentally." Appellant contends that this instruction diminished the burden of proof. Furthermore, appellant argues that it is irrational and arbitrary to presume purpose from proof that no accident occurred.

**{¶ 54}** In *State v. Stallings* (2000), 89 Ohio St.3d 280, 290-291, 731 N.E.2d 159, 172, we upheld a similar instruction on purpose. We explained that the instruction correctly "advises the jury that if it finds that the shooting was the result of an 'accident,' then the act could not have been done intentionally." *Id.* at 291, 731 N.E.2d at 172. See, also, *State v. Fears* (1999), 86 Ohio St.3d 329, 340, 715 N.E.2d 136, 148, where we upheld an instruction on the defense of accident, finding that "the concept of accident is tantamount to a denial that the act was intentional."

**{¶ 55}** In proposition of law fifteen, appellant objects to the following instruction:

"You shall sentence the defendant to death only if you unanimously find by proof beyond a reasonable doubt that the aggravating circumstances outweigh the mitigating factors.

"If you do not so find, you shall consider either a sentence of life without parole eligibility, a life sentence with parole eligibility after serving 30 full years of imprisonment, or a sentence of life with parole eligibility after serving 25 full years of imprisonment."

**{¶ 56}** Appellant contends that the instruction is similar to one we struck down in *State v. Brooks* (1996), 75 Ohio St.3d 148, 159-160, 661 N.E.2d 1030, 1040-1041, which told the jury that they were required "to determine unanimously that the death penalty is inappropriate before you can consider a life sentence." We disagree. Unlike the instruction in *Brooks*, which instructed the jury that they had

14

to unanimously reject the death penalty before they could consider a life sentence, the instruction in the case at bar specifically advises the jury that if they cannot reach a unanimous recommendation of death, then they shall consider life sentences. This instruction is proper.

{¶ 57} Accordingly, we reject appellant's eleventh, twelfth, and fifteenth propositions of law.

## VI. INEFFECTIVE ASSISTANCE OF COUNSEL

{¶ 58} In proposition of law five, appellant raises several instances of alleged ineffective assistance of counsel. Reversal of a conviction based upon ineffective assistance of counsel requires that the defendant show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693; *State v. Lytle* (1976), 48 Ohio St.2d 391, 396-397, 2 O.O.3d 495, 498, 358 N.E.2d 623, 627. In reviewing the following alleged instances of misconduct, we conclude that there was no ineffective assistance of counsel, which would warrant reversal.

### A. Penalty phase closing argument

{¶ 59} During closing argument, defense counsel told the jury:

"If you cannot say that you have found beyond a reasonable doubt that death is an appropriate penalty, *then you must go on and consider the other life verdicts*. That is the law." (Emphasis added.)

{¶ 60} Appellant contends that counsel erred in making an "acquittal first" argument, since it invited the jurors to disregard mitigating circumstances unless they first found that death was inappropriate. Appellant argues that this type of argument is inappropriate under *State v. Brooks*, 75 Ohio St.3d at 160, 661 N.E.2d at 1041. We disagree and do not find that defense counsel made an "acquittal first" argument. Instead, defense counsel accurately paraphrased R.C. 2929.03(D)(2).

Moreover, defense counsel subsequently argued appellant's mitigating factors in advocating that the jury reject the death sentence.

### B. Failure to object to jury instructions

**{¶ 61}** Appellant alleges ineffective assistance of counsel by his attorney's failure to object to certain jury instructions. First, appellant contends that several instructions erroneously advised the jury that they must unanimously acquit the defendant of the crime and the specifications before they could consider lesser offenses. Appellant contends that these instructions were erroneous under *State v. Thomas* (1988), 40 Ohio St.3d 213, 218-221, 533 N.E.2d 286, 291-293. However, unlike the instructional error that occurred in *Thomas*, in this case the jury were not instructed to unanimously acquit the accused of an offense before moving to any lesser offense. Thus, counsel's failure to object was not error.

**{¶ 62}** Appellant also contends that trial counsel should have objected to jury instructions that permitted the jury to "aggregate" aggravating circumstances and "collectively weigh" these aggravating circumstances against mitigating factors. This argument lacks merit. The court specifically charged the jury: "The penalty for each individual count must be assessed separately. Only the aggravating circumstances related to a given count may be considered in assessing the penalty for that count." It is fundamental that jury instructions must be considered as a whole. See *State v. Price* (1979), 60 Ohio St.2d 136, 14 O.O.3d 379, 398 N.E.2d 772, paragraph four of the syllabus. When the jury instructions in this case are read as a whole, we find no error with this charge. Therefore, we reject appellant's argument that defense counsel's failure to object to this instruction was evidence of ineffective assistance of counsel.

### C. Reintroduction of exhibits

**{¶ 63}** Appellant also argues that counsel's failure to object to the reintroduction of prosecution exhibits during the penalty phase constitutes ineffective assistance of counsel, since this evidence was not relevant in proving

the aggravating circumstances and should have been excluded. The evidence includes a blowup sketch of the scene, photographs, including photographs of the scene, the seat cushion, bloody carpeting, plastic baggies, a shotgun, and a rifle.

{¶ 64} Under Evid.R. 401, we find that this evidence was relevant in that it pertains to the nature and circumstances of the aggravating circumstances. See *State v. Gumm* (1995), 73 Ohio St.3d 413, 653 N.E.2d 253, syllabus. Furthermore, if any prejudice is associated with admitting this evidence, this can be cured by our independent sentence reassessment. *State v. Combs*, 62 Ohio St.3d at 286, 581 N.E.2d at 1079.

D. Failure to call a defense witness

{¶ 65} Appellant also contends that trial counsel's refusal to call Michael Patterson as a defense witness constituted ineffective assistance of counsel. As discussed previously in our discussion of prosecutorial misconduct, defense counsel chose not to call Patterson as a witness because Patterson was planning on invoking his Fifth Amendment right to remain silent. Nevertheless, appellant argues that it was the trial court's responsibility to determine whether Patterson had the right to exercise his Fifth Amendment rights. Thus, appellant maintains that defense counsel should have called Patterson as a witness.

{¶ 66} We have previously held that "[w]hen a witness asserts a privilege against self-incrimination, a court may not rely upon the witness's claim alone. *State v. Landrum* (1990), 53 Ohio St.3d 107, 120, 559 N.E.2d 710, 726. The court has a duty to determine if the witness's refusal to answer is justified. *Id.*" *State v. Reiner* (2000), 89 Ohio St.3d 342, 352, 731 N.E.2d 662, 673; see, also, *Hoffman v. United States* (1951), 341 U.S. 479, 486-487, 71 S.Ct. 814, 818, 95 L.Ed. 1118, 1124. This was not done in this case. Nevertheless, counsel's decision in not calling Patterson as a defense witness could well have been a tactical decision and therefore cannot be considered as rising to the level of ineffective assistance of counsel. *State v. Tibbetts* (2001), 92 Ohio St.3d 146, 166, 749 N.E.2d 226, 253.

Furthermore, appellant has not proven that but for his counsel's actions, the result of the case would have been different. See *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus. In fact, there was no showing that the testimony of Patterson would have aided appellant in his defense. Therefore, appellant has not established that he was prejudiced by this omission. Accordingly, we do not find that counsel's performance in this regard constitutes ineffective assistance.

### E. Failure to object to expert testimony

{¶ 67} Appellant also contends that his trial counsel's performance was deficient because counsel did not object to various state experts who expressed their opinions in terms of a "reasonable degree of scientific certainty" or a "reasonable degree of medical certainty" rather than in terms of probability. This argument lacks merit. An expert opinion is competent if it is held to a reasonable degree of scientific or medical certainty. *State v. Benner* (1988), 40 Ohio St.3d 301, 313, 533 N.E.2d 701, 714. In this regard, we have found that "reasonable certainty" is synonymous with the term "probability." *Id.* The expert opinions were properly expressed.

### F. Failure to object to improper impeachment

{¶ 68} Appellant contends that defense counsel's failure to object to the state's impeachment of its own witness, Ivana King, constitutes ineffective assistance of counsel.

{¶ 69} When questioning King, the prosecutor asked King whether she remembered making a tape-recorded statement, in which she told police that appellant said he had "done two people." King admitted that the tape contained that remark, but that she did not remember appellant's ever saying that to her. The prosecutor then proceeded to impeach King with her prior statement. This was improper under Evid.R. 607(A), which provides that a party may not impeach its own witness with a prior inconsistent statement unless there is a showing of surprise

and affirmative damage. Consequently, defense counsel's failure to object was deficient in this respect. However, even if defense counsel had objected to this line of questioning, the prosecutor would still have been able to properly introduce the witness's statement under Evid.R. 803(5), as past recollection recorded. Therefore, appellant suffered no prejudice from his counsel's failure to object.

### G. Failure to object to prosecutorial vouching

{¶ 70} Appellant argues that defense counsel should have objected to the prosecutor's vouching for the credibility of its own witness, Derrick Boone.

{¶ 71} On direct examination, Boone testified that his plea agreement required him to provide truthful testimony. The prosecutor reiterated this point through further questioning of Boone and through the testimony of Detective Zachary Scott, who was asked whether Boone was "repeatedly asked to tell the truth." Appellant says that this was improper prosecutorial vouching.

{¶ 72} An attorney may not express his or her belief or opinion regarding the credibility of a witness. *State v. Smith* (1984), 14 Ohio St.3d 13, 14, 14 OBR 317, 318, 470 N.E.2d 883, 885. However, the line of questioning in this case was not prosecutorial vouching, as appellant alleges. Instead, the evidence reveals that, through Boone's testimony, the prosecutor was establishing that there was, in fact, a plea agreement, and that as part of that agreement, Boone had agreed to tell the truth. See *State v. Williams* (1997), 79 Ohio St.3d 1, 12-13, 679 N.E.2d 646, 657-658. The question to Detective Scott, however, did not relate to the plea agreement. Nevertheless, even if this questioning was improper, any error that may have occurred was certainly not outcome-determinative.

### H. Failure to object to leading questions

{¶ 73} Appellant also alleges that trial counsel was ineffective in failing to object to excessive leading questions by the state during Boone's direct examination. However, it is within the trial court's discretion to allow leading questions on direct examination. See Staff Note, Evid.R. 611(C); *State v.*

*D'Ambrosio* (1993), 67 Ohio St.3d 185, 190, 616 N.E.2d 909, 914. Therefore, we do not find that the failure to object to any leading questions constitutes ineffective assistance of counsel.

{¶ 74} Appellant has not demonstrated that any claimed deficiencies of trial counsel created "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.

## VII. EXCLUSION OF ACCOMPLICE PLEA AGREEMENT

{¶ 75} In proposition of law thirteen, appellant contends that the trial court erred in the penalty phase by excluding the plea agreement of a nontestifying accomplice (Patterson) as irrelevant and in refusing to allow defense counsel to discuss two other plea agreements (Williamson's and Boone's) in their closing argument. Appellant argues that these three plea agreements should have been considered, since the three accomplices and appellant were involved together in the crime and consideration of the agreements would have assisted the jury in making "a reasoned inquiry into the relative culpability" of appellant.

{¶ 76} In *McKoy v. North Carolina* (1990), 494 U.S. 433, 441, 110 S.Ct. 1227, 1232, 108 L.Ed.2d 369, 380, the United States Supreme Court held that mitigating evidence must be admitted if the sentencer could "reasonably find that it warrants a sentence less than death." As applied to this case, there is no evidence that the introduction of these plea agreements into mitigation evidence would warrant the finding of a sentence less than death. The evidence clearly established that appellant was the sole triggerman who alone decided to shoot the two victims. He was also one of the key people who planned the robbery. Thus, appellant's culpability differed from that of Patterson, Boone, or Williamson only in that it was greater. Consequently, the plea agreements do not provide a reasonable basis for the jury to have recommended a sentence less than death. Moreover, the plea

20

agreement of Patterson was properly excluded. Since he did not testify at trial, his plea agreement was irrelevant.

{¶ 77} We overrule appellant's thirteenth proposition of law.

## VIII. SENTENCING OPINION

{¶ 78} In proposition of law two, appellant contends that his death sentence should be reversed because of flaws in the sentencing opinion.

{¶ 79} R.C. 2929.03(F) requires that the court issue specific findings as to "the reasons why the aggravating circumstances the offender was found guilty of committing were sufficient to outweigh the mitigating factors." Appellant argues that the sentencing opinion failed to properly articulate the reasons for following the jury's recommendation of death, and that the sentencing opinion was deficient in other respects.

{¶ 80} Prior to sentencing, the six counts of aggravated murder were merged into two, each of which carried two aggravating circumstances. In its sentencing opinion, the trial court recited the facts of the case and then properly identified the aggravating circumstances. The court then discussed the mitigating factors. The court gave little weight in mitigation to the nature and circumstances of the offense and to appellant's history, character, and background, finding that appellant was, in fact, raised in a caring and loving environment. The court then concluded that in weighing the aggravating circumstances against the mitigating factors, the aggravating circumstances outweighed the mitigating factors.

{¶ 81} In reaching this conclusion, the trial court stated that the murders were "cold-blooded, senseless acts, committed for the purpose of preventing the victims from identifying the Defendant following the commission of these crimes." Although the court was justified in referring to the murders as "cold-blooded, senseless acts," since "the nature of the murders goes to the nature and circumstances of the (A)(7) [felony-murder] aggravating circumstance," *State v. Campbell* (2000), 90 Ohio St.3d 320, 345, 738 N.E.2d 1178, 1203, the trial court

erred in relying upon the fact that the murders were committed to escape detection for another offense, since appellant was not charged with this aggravating circumstance.

{¶ 82} The trial court also erred in characterizing facts about appellant's upbringing as nonstatutory aggravating circumstances, when it stated in its opinion that it was "deeply troubled that this defendant, has turned his back on the moral lessons of his youth, and has resorted to force to acquire that which he did not need." However, these deficiencies are so not so grave as to warrant our reversal. Cf. *State v. Green* (2000), 90 Ohio St.3d 352, 360-364, 738 N.E.2d 1208, 1222-1224. Moreover, our independent reweighing can rectify any errors in the sentencing opinion. *State v. Fox* (1994), 69 Ohio St.3d 183, 191, 631 N.E.2d 124, 131.

{¶ 83} We overrule proposition of law two.

## IX. CUMULATIVE ERROR

{¶ 84} In proposition of law seventeen, appellant argues that the cumulative effect of the errors in this case denied him a fair trial. A conviction may be reversed if the cumulative effect of the errors deprives the defendant of a fair trial. *State v. DeMarco* (1987), 31 Ohio St.3d 191, 31 OBR 390, 509 N.E.2d 1256, paragraph two of the syllabus; *State v. Moore* (1998), 81 Ohio St.3d 22, 41, 689 N.E.2d 1, 18. However, in this case, we find that appellant received a fair trial and a fair sentencing determination. Accordingly, we reject appellant's seventeenth proposition of law.

## X. CONSTITUTIONAL ISSUES

{¶ 85} In propositions of law one and four, appellant challenges the constitutionality of Ohio's death penalty statutes, including the direct appeal procedure taken from the trial court to the Ohio Supreme Court if the death penalty is imposed. These challenges are summarily rejected. See, *e.g.*, *State v. Poindexter* (1988), 36 Ohio St.3d 1, 520 N.E.2d 568, syllabus; *State v. Carter* (2000), 89 Ohio

St.3d 593, 607, 734 N.E.2d 345, 357; *State v. Smith* (1997), 80 Ohio St.3d 89, 684 N.E.2d 668, paragraph one of the syllabus; *State v. Jenkins* (1984), 15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264.

## XI.  INDEPENDENT SENTENCE REVIEW

{¶ 86} Having considered appellant's propositions of law, as required by R.C. 2929.05(A), we now independently review appellant's death sentences for appropriateness and proportionality.  Appellant was convicted of multiple counts of aggravated murder with death penalty specifications under R.C. 2929.04(A)(5) and (A)(7).  With respect to the aggravating circumstances, the evidence established beyond a reasonable doubt that the murders were purposeful killings that occurred while appellant committed the offenses of aggravated robbery and kidnapping, and that appellant was the principal offender.

{¶ 87} Against these aggravating circumstances, we now weigh the mitigating factors contained in R.C. 2929.04(B).  As mitigation evidence, appellant presented the testimony of several witnesses.  Appellant's father testified that he had moved out of their home when appellant was three or four years old, and that since that time, he had minimal contact with him.  However, he stated that he loves his son and does not want to see him put to death.

{¶ 88} Appellant's mother testified that she lived with appellant's father for approximately five years, but that they separated because of domestic violence.  After that, she stated that they moved frequently when appellant was young.  She testified that she helped appellant with his homework.  By the time appellant was nine or ten years old, his grandmother moved in with the family to help raise him.  She stayed there until she died in 1992.  Appellant's mother described appellant as an average student who dropped out in the twelfth grade in order to earn money to support his child.  She also testified that appellant was active in their church.  She, too, expressed her love for her son.

{¶ 89} Appellant's pastor testified that appellant regularly attended church until he was sixteen years old and that he was active in the church. Appellant was a member of the youth choir, the Bible Bowl, and other youth organizations. A family friend also testified that in 1990 or 1991, appellant rescued her grandson who was drowning in the apartment swimming pool.

{¶ 90} Appellant made an unsworn statement, where he pointed out that although he had dropped out of school, he completed his GED and "passed the course at the top of the class, the highest scores in the past two years." Appellant also said that when he went to school, he excelled in vocational training and was class president for two years. Appellant acknowledged that he held many jobs but stressed that he had never lost a job and had never been fired from a job. Furthermore, appellant stated that he has a lot of contact with his three children. Appellant said that he accepts the jury's verdict, recognizing that he will "have to deal with that" and "move on with [his] life the best way that [he] possibly can."

{¶ 91} Of the seven mitigating factors listed in R.C. 2929.04(B), under R.C. 2929.04(B)(4), appellant's age of twenty-two is entitled to some weight. See *State v. White* (1999), 85 Ohio St.3d 433, 454, 709 N.E.2d 140, 160; but, cf., *State v. Ballew* (1996), 76 Ohio St.3d 244, 257, 667 N.E.2d 369, 382. Under the catchall provision, R.C. 2929.04(B)(7), we also consider appellant's history, character, background, work record, and remorse.

{¶ 92} The testimony concerning appellant's history, character, and background reveal that appellant grew up, for the most part, in a single-parent home, with his father having little contact with him. However, it is evident that his mother provided him with a loving environment and encouraged him to do well in school and regularly attend church. The fact that appellant grew up without the benefit of a strong father figure provides only very modest weight in mitigation.

{¶ 93} Although appellant obtained his GED and worked without ever being fired, this provides very little weight in mitigation. We also give little weight

to the fact that appellant stated that he accepted the guilty verdict and was ready to move on with his life. Although making these statements, appellant never expressed any remorse or sorrow for the two people he killed. *State v. Robb* (2000), 88 Ohio St.3d 59, 91, 723 N.E.2d 1019, 1051.

{¶ 94} Furthermore, we find nothing in the nature and circumstances of these murders to mitigate appellant's offenses. The murders were cold-blooded, execution-style killings. Appellant directed his victims to lie face down on the floor next to each other. Appellant then grabbed a pillow from the couch, put it behind Hunter's head, hesitated, and then shot him. After shooting Hunter, Walker begged appellant to spare his life. Appellant ignored these pleas and killed Walker execution-style as well.

{¶ 95} Upon weighing the aggravating circumstances against the mitigating factors, we find that the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt.

{¶ 96} We also find that the death penalty imposed in this case is both appropriate and proportionate when compared with similar capital cases. See *State v. Hawkins* (1993), 66 Ohio St.3d 339, 612 N.E.2d 1227; *State v. Palmer* (1997), 80 Ohio St.3d 543, 687 N.E.2d 685; *State v. Hicks* (1989), 43 Ohio St.3d 72, 538 N.E.2d 1030.

{¶ 97} Accordingly, the judgment of the trial court is affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

—————————————

APPENDIX

{¶ 98} "Proposition of Law One: Imposition of the death sentence violates the Sixth, Eighth and Fourteenth Amendments to the U.S. Constitution and Article I, Sections 2, 9, 10 and 16 of the Ohio Constitution.

**{¶ 99}** "Proposition of Law Two:  (a) The trial court commits prejudicial error, in a capital case, when it fails to file a separate opinion properly detailing the reasons for following the jury's recommendation, thus subverting the reliability process required for review contra the Eighth and Fourteenth Amendments to the Constitution.

**{¶ 100}** "[Proposition of Law Two]:  (b) When the opinion filed by the trial court is totally lacking in the statutory requirements of R.C. 2929.03(F), the failure to comply constitutes reversible error and the sentence cannot stand.

**{¶ 101}** "Proposition of Law Three:  Where the trial court allows the alternate jurors to retire to the jury room with the twelve regular jurors, the trial court commits reversible error and deprives the accused of his rights to a trial by a fair and impartial jury and due process of law, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article One, Sections Ten and Sixteen of the Ohio Constitution.

**{¶ 102}** "Proposition of Law Four:  A change in the Ohio Constitution, which provides less review to capital appellants (whose crimes were committed on or after January 1, 1995), violates the Fourteenth Amendment and fails to provide the meaningful appellate review mandated by the Eighth Amendment.

**{¶ 103}** "Proposition of Law Five:  Multiple instances of deficient performance in the conduct of the eligibility and penalty phases of a capital trial coupled with prejudice inuring to the detriment of the defendant result in the denial of the right to a fair trial and the right to effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution.

**{¶ 104}** "Proposition of Law Six:  It is improper for the prosecution to bolster its case by referring to matters outside the record and thereby placing a burden of production on the defendant to rebut the matters.

{¶ 105} "Proposition of Law Seven: A defendant is denied a fair trial where a witness' testimony is relevant to the defendant's case and the prosecution deliberately causes that witness to refuse to testify.

{¶ 106} "Proposition of Law Eight: To sustain a conviction for felonious assault by causing physical harm by means of a deadly weapon, the deadly weapon must be used in the manner or purpose for which it is designed.

{¶ 107} "Proposition of Law Nine: To sustain a conviction for aggravated murder under [R.C.] 2903.01(A) there must be evidence of prior calculation and design.

{¶ 108} "Proposition of Law Ten: In a capital murder trial it is error to admit firearms in the eligibility and penalty phases that are not identified as having been used during the course of the offense.

{¶ 109} "Proposition of Law Eleven: Prior calculation and design for murder must be based on a calculated decision to kill, not a calculated decision to commit robbery or any other felony.

{¶ 110} "Proposition of Law Twelve: To presume 'purpose' as defined by R.C. Section 2901.22(A) from a lack of evidence suggesting accident as the genesis of an act is irrational and arbitrary.

{¶ 111} "Proposition of Law Thirteen: Evidence concerning the degree of a defendant's relative culpability is evidence which might serve as a basis for a sentence of less than death and is, therefore, admissible as mitigating evidence.

{¶ 112} "Proposition of Law Fourteen: Prosecutorial misconduct in the penalty phase of a death penalty trial which undermines one's confidence in the jury's recommendation of a death sentence is sufficient to vacate the sentence.

{¶ 113} "Proposition of Law Fifteen: A jury is not required to unanimously rule out the death penalty before considering a life sentence.

{¶ 114} "Proposition of Law Sixteen: A jury instruction that requires that a life sentence recommendation be unanimous materially prejudices a capital

defendant's right to a fair trial and to be free from deprivation of life without due process of law under the Fourteenth Amendment to the United States Constitution.

{¶ 115} "Proposition of Law Seventeen:  Where there are multiple instances of error, and the cumulative effect of such errors undermines one's confidence in the reliability of the conviction and sentence of death, the right[s] of an accused to a fair trial comporting with the minimal requirements of due process and to be free from cruel and unusual punishment under the Sixth, Eighth and Fourteenth Amendments of the United States Constitution and the corresponding provisions of the Ohio Constitution have been violated."

_____

*Ron O'Brien*, Franklin County Prosecuting Attorney, *Joyce S. Anderson* and *Amy H. Kulesa,* Assistant Prosecuting Attorneys, for appellee.

*W. Joseph Edwards* and *Keith Yeazel*, for appellant.

_____