OPINION
Defendant-appellant, Terron Hairston, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of aggravated robbery, in violation of R.C. 2911.01, with a firearm specification. Because the jury was unable to reach a unanimous decision on two additional counts charging defendant with the aggravated murder of Jason McBride, a mistrial was declared on those two counts.
According to state's evidence, on the evening of October 3, 1998, Christopher and Denzil Thompson, who were then fourteen and sixteen years old, respectively, were gathered at the residence of Erica Richards with defendant and some other people. Defendant is the half-brother of the father of Richards' children and frequently stayed with Richards.
McBride, also known as "J. Rock," came to Richards' residence searching for drugs to buy, and showed Richards a large wad of money with which to buy the drugs. Christopher overheard Richards suggest to defendant, "Rob him. But if you rob him, you are going to have to kill him." (Tr. II, 349.) According to Christopher, defendant "wasn't saying no, he wasn't going to do it. But it wasn't like, you know, he was like, All right. I'm going to do it." (Tr. III, 350.) Earlier in the day, defendant had shown Christopher a revolver he had tucked in his pants.
Defendant made plans with McBride to go for a ride to get some drugs. Defendant asked Denzil to join them, telling Denzil that he was going to rob McBride. The three got into defendant's car, and defendant drove to an area near Amvets Park on the north side of Columbus.
According to Denzil, the three got out of the car and walked into the park, where defendant pulled a gun; he demanded McBride give him the money and empty his pockets. Defendant ordered McBride to pull his pants down so defendant could see if McBride was concealing drugs and to take off a sweatshirt McBride was wearing. Defendant then told McBride to run and, as McBride ran, defendant shot him in the back. When McBride fell, defendant ran up to him and shot him in the head.
Defendant and Denzil drove to the house of defendant's father, where defendant asked someone to "put up the gun." At that time, defendant's cousin Donta Cook lived with defendant's father. Although in previous interviews with the police Donta apparently had acknowledged defendant was at his father's house on the night at issue, Donta testified at trial he could not recall defendant being there that evening, and he also denied defendant gave him a gun that night. Donta was presented at trial as the court's witness and both parties were allowed to cross-examine him.
Defendant and Denzil returned to Richards' residence. When Mary Thompson later picked up her sons there, she found Denzil upset and in tears. During that night, Denzil told his mother what happened. McBride's body was discovered in the park the following day.
William Gillette was the lead detective in the case. Three months after the murder, he received a telephone call from a woman identified only as "Mary," who informed him Richard Harris, then locked up at the workhouse, had information regarding the case. Without giving specific information, Harris told Gillette a fifteen-year-old boy who was close to him knew who killed McBride. Harris asked Gillette to contact Harris' attorney because Harris wanted help regarding the charges against him. Through some leads, Gillette traced Harris to Mary Thompson, who was Harris' girlfriend. Gillette interviewed Mary and her son Denzil, and defendant was subsequently arrested and charged with McBride's robbery and murder.
A stipulation was entered at trial that, as consideration for his role in the murder investigation, Harris was offered a plea bargain by the prosecution on a pending felony drug charge that reduced the severity of the felony and the sentence Harris was to receive.
On October 12, 2000, a jury convicted defendant of the aggravated robbery of McBride, but was unable to reach a unanimous verdict on two counts of aggravated murder with death penalty specifications. Defendant appeals from his conviction, assigning the following errors:
 FIRST ASSIGNMENT OF ERROR: Appellant received ineffective assistance of counsel.
 SECOND ASSIGNMENT OF ERROR: Improper statements by the prosecuting attorney in the rebuttal portion of closing arguments denied appellant a fair trial.
Defendant's first assignment of error asserts defendant was denied his right to effective assistance of counsel as guaranteed by the Sixth Amendment. Specifically, defendant contends his trial counsel was ineffective because he failed to object to irrelevant and hearsay testimony, resulting in prejudice to defendant which undermines confidence in the outcome of the proceedings.
In order to prevail on an ineffective assistance of counsel claim, a defendant must meet the two-prong test enunciated in Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052. "Initially, defendant must show that counsel's performance was deficient. To meet that requirement, defendant must show that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed by the Sixth Amendment. Defendant may prove counsel's conduct was deficient by identifying acts or omissions that were not the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. Next, if defendant successfully proves that counsel's assistance was ineffective, the second prong of the Strickland test requires defendant to prove prejudice in order to prevail. To meet that prong, defendant must show counsel's errors were so serious as to deprive defendant of a fair trial, a trial whose result is reliable. A defendant meets this standard with a showing `that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" State v. Sieng (Dec. 30, 1999), Franklin App. No. 99AP-282, unreported. (Citations omitted.)
This court need not determine whether defense counsel's performance was deficient before examining the prejudice suffered by defendant as a result of the alleged deficiencies. State v. Bradley (1989),42 Ohio St.3d 136, 143, certiorari denied (1990), 497 U.S. 1011, citing Strickland, supra, at 697. "[T]he test for prejudice must be conducted in light of the evidence in the record." Bradley, supra, at 146. Defendant must overcome a strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy. State v. Carter (1995), 72 Ohio St.3d 545, 558, certiorari denied, 516 U.S. 1014, citing Strickland, supra, at 689.
Defendant initially contends trial counsel was deficient in failing to object to testimony which he characterizes as hearsay. Hearsay is a "statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay is generally inadmissible because the declarant, the person who made the statement, is not testifying in court and the trier of fact is unable to observe the declarant and decide whether the declarant's statement is worthy of belief: "whether the declarant correctly perceived that about which he is making a statement, whether he remembers it correctly, whether his words accurately convey what he means to say, and whether he is telling the truth." Covington v. Sawyer (1983), 9 Ohio App.3d 40, 43. We note here that each of the declarants of the allegedly hearsay statements testified at trial and were available for cross-examination regarding the statements attributed to him or her. Under such circumstance, the purposes and policies of the hearsay rule generally are not defeated by the admission of the statements. Carter, supra; Covington, supra, at 43-44.
Within those parameters, defendant takes issue with the statements Christopher Thompson attributed to Erica Richards when she allegedly suggested that defendant rob and kill McBride. Richards' statements are very inculpatory of Richards, but defendant's purported response to Richards' suggestion is noncommittal and, at most, only moderately inculpatory of defendant. Defense counsel's failure to object to the testimony may have been deliberate and in furtherance of a legitimate trial strategy to direct the guilt at Richards, rather than defendant. Strickland, supra, at 689; Carter, supra. Moreover, in light of the other testimony admitted, the moderately inculpatory statements at issue did not substantially prejudice defendant.
Defendant next takes issue with Mary Thompson's testimony that on the night of the murder, her son Denzil told her that "Terron robbed this guy and shot him, and he had him [Denzil] with him." (Tr. IV, 582.) Assuming Thompson's statement constituted inadmissible hearsay, we note the statement was cumulative to and followed Denzil's own extensive testimony concerning the robbery and murder. In light of the testimony by Denzil, any prejudice defendant suffered resulting from the admission of Thompson's testimony was minimal. Defendant thus has further failed to demonstrate that the result of the trial probably would have been different had Thompson's testimony on this point successfully been challenged by defense counsel.
Defendant also challenges testimony of Detective Gillette concerning (1) statements made to him in interviews with various witnesses, and (2) photographic identification made of two individuals other than defendant. Gillette's testimony did not constitute inadmissible "hearsay" because the statements were not offered to prove the truth of the matters asserted. Evid.R. 801(C). Rather, the statements were offered to show the course of the investigation by the police and were admissible as such. See State v. Thomas (1990), 61 Ohio St.2d 223, 232 (an out-of-court statement is generally admissible when offered to explain a police officer's conduct while investigating a crime); State v. Holt (Aug. 20, 1998), Franklin App. No. 97APA10-1361, unreported (testimony admissible to explain investigative activities of police or detectives).
Defendant next contends defense counsel was deficient in failing to object to testimony concerning (1) the difficulty in getting witnesses, who were related to defendant, to come to court, and (2) harassment, or fear of harassment, on the part of the state's witnesses. Defendant contends the testimony was irrelevant and was intended to generate both sympathy for the prosecution witnesses and fear of defendant.
Contrary to defendant's contentions, the prosecution's questions were relevant and admissible concerning the witnesses' credibility and possible bias in this case. Evid.R. 616(A). See State v. Hager (Feb. 8, 1994), Franklin App. No. 93AP-260, unreported (intimidation or fear resulting from threats against witness admissible regarding witness credibility and possible bias); State v. Lumpkin (Feb. 25, 1990), Franklin App. No. 91AP-567, unreported (inducements offered to witness to testify are admissible to show possible witness bias). Strickland; Carter, supra.
Defendant finally contends defense counsel was ineffective for failing to object to the prosecution's questioning of Donta Cook, defendant's cousin, regarding the prosecution's involvement in a plea bargain on a felony drug offense which was negotiated with Cook a couple of months prior to the trial in this case. The witness' plea arrangement with the prosecution was relevant and admissible under Evid.R. 611(B) to reveal potential bias on the part of the witness. The jury was entitled to determine whether the plea bargain may have been offered to Cook as an inducement in exchange for his testimony, and whether that inducement affected his testimony here. See Lumpkin, supra. Defense counsel did not render deficient performance by failing to object to the questioning. Defendant's first assignment of error is overruled.
In his second assignment of error, defendant asserts the prosecution engaged in misconduct in the rebuttal portion of the state's closing arguments. Specifically, defendant contends the prosecution improperly commented on defendant's failure to testify at trial, denigrated defense counsel, and improperly offered testimony during his rebuttal argument.
"[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips (1982), 455 U.S. 209, 219,102 S.Ct. 940, 947. As such, misconduct is not grounds for reversal unless the defendant has been denied a fair trial. State v. Maurer (1984),15 Ohio St.3d 239, 266, certiorari denied (1985), 472 U.S. 1012. A prosecutor is afforded a certain degree of latitude in his concluding remarks, State v. Grant (1993), 67 Ohio St.3d 465, 482, certiorari denied (1994), 513 U.S. 836, may draw reasonable inferences from the evidence at trial, and may comment on those inferences during closing argument. State v. Smith (1997), 80 Ohio St.3d 89, 111, certiorari denied (1998),523 U.S. 1125. The test regarding prosecutorial misconduct in closing argument is whether the remarks were improper and, if so, whether they prejudicially affected the defendant's substantial rights. State v. Smith (1984), 14 Ohio St.3d 13, 14; State v. Jackson (2001), 92 Ohio St.3d 436,441. In making this determination, we view the allegedly improper remarks in context and consider the closing argument in its entirety to determine whether the remarks were prejudicial. State v. Treesh (2001),90 Ohio St.3d 460, 466, certiorari denied, ___ U.S.__, 121 S.Ct 2247; State v. Flowers (May 4, 2000), Franklin App. No. 99AP-530, unreported.
Defendant generally did not object to the prosecution's comments challenged on appeal; accordingly, defendant has waived all but plain error which adversely affected a substantial right of defendant. Crim.R. 52(B); State v. Nields (2001), 93 Ohio St.3d 6, 38; Lumpkin, supra. "Traditionally, notice of plain error is taken with utmost caution only under exceptional circumstances and only when necessary to prevent a manifest miscarriage of justice." Lumpkin, supra, citing State v. Long (1978), 53 Ohio St.2d 91, 97.
Defendant first asserts the prosecution improperly commented on defendant's failure to testify. A prosecutor may not comment on a defendant's failure to testify at trial. State v. Fears (1999),86 Ohio St.3d 329, 336, certiorari denied (2000), 529 U.S. 1039, citing Griffin v. California (1965), 380 U.S. 609. The test for prosecutorial misconduct in referring to a defendant's failure to testify is "whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." State v. Webb (1994),70 Ohio St.3d 325, 328, certiorari denied (1995), 514 U.S. 1023.
Here, at the beginning of rebuttal argument, the prosecution commented:
 She [Mary Thompson] kept her family alive. That's what she did. That's all she did. She kept her family alive. They can't explain, why Terron? Why on earth would this family pick on a friend of theirs? Why Terron? He hasn't answered one question here. Why Terron? He sits there and trashes all these people. But you know what, when he came down to it, he didn't lay one glove on Denzil on cross. (Tr. VII, 952.) (Emphasis added.)
The remarks challenged on appeal, emphasized above, responded to defense counsel's statement in closing that "Terron said he didn't do this," and responded to defense counsel's related comments that defendant had the right to come into a courtroom and say "I didn't do it" and to ask the jury to consider that during their deliberations. The remarks were also part of a response to defense counsel's argument in closing that Mary Thompson was an "unbelievable liar," and that she and her sons fabricated the story of defendant's culpability as part of a scheme to get Mary's boyfriend, Harris, out of jail on a deal.
An otherwise inappropriate comment by a prosecutor in rebuttal argument may be proper where it is an "invited response" to defense counsel's summation. See State v. Brown (1988), 38 Ohio St.3d 305, 316-317, certiorari denied (1989), 489 U.S. 1040. The remarks were brief, and in the context in which they were made, they were not "manifestly intended" or "of such character that the jury would naturally and necessarily take [the remarks] to be a comment on the failure of the accused to testify." Webb, supra, at 328. Moreover, following the parties' closing arguments, the trial court instructed the jury that defendant's failure to testify could not be considered for any purpose. The jury is presumed to follow the court's instructions. State v. Coleman (1999), 85 Ohio St.3d 129,135, certiorari denied, 528 U.S. 954. Because the prosecution's comments were not outcome-determinative and did not deny defendant a fair trial, defendant is not entitled to reversal on the basis of plain error related to those remarks.
Defendant next argues the prosecution improperly denigrated defense counsel when the prosecution stated during rebuttal, "I was offended by Mr. Rogers. I think he is a very good lawyer, but I think he is trying to stretch it." (Tr. VII, 954.)
A prosecutor may not make unfair or derogatory remarks about defense counsel. Smith, supra, 14 Ohio St.3d at 14; State v. Keenan (1993),66 Ohio St.3d 402. In context, the above remarks of the prosecution appropriately commented on the weakness of defendant's case and responded to defense counsel's suggestion that evidence presented by the prosecution was "dirty" and unbelievable. Even if error, the remarks were not pervasive. See State v. Getsy (1998), 84 Ohio St.3d 180, 194, certiorari denied (1999), 527 U.S. 1042. Compare Keenan, supra. The prosecution's comments about defense counsel did not rise to the level of "plain error" that prejudiced defendant's substantial rights.
Finally, defendant contends the prosecution improperly "testified" during rebuttal argument. A review of the record reveals that the prosecution's argument constituted a summation of the evidence introduced at trial. Lumpkin, supra. To the extent the prosecution may have referred to matters outside the record presented at trial, the references were short, were justified as a reply to defense arguments, and did not result in error prejudicial to defendant. See State v. Lott (1990),51 Ohio St.3d 160, 166, certiorari denied, 498 U.S. 1017. Defendant's second assignment of error is accordingly overruled.
Having overruled defendant's two assignments of error, we affirm the judgment of the trial court.
BOWMAN and PETREE, JJ., concur.