OPINION *Page 2 
{¶ 1} Appellant, Arthur V. Rogers, appeals his conviction and sentence for domestic violence. Appellee is the State of Ohio.
 STATEMENT OF FACTS AND CASE {¶ 2} Katherine McGarry lived in an upstairs apartment in a building in Newark with appellant. They lived together as boyfriend and girlfriend from November of 2002 through June of 2007.
 {¶ 3} In the evening of June 25, 2007, Katherine was lying in bed watching the Cosby show and drinking beer. Appellant yelled at her to turn off the television and made racially derogatory comments about the television program she was watching. He climbed on top of her and squeezed her face. They continued to argue loudly. Appellant eventually got off of Katherine, and she got out of bed and went into the living room. Appellant followed her into the living room and "smacked her upside of the head." Tr. 73.
 {¶ 4} Katherine ran out of the apartment and downstairs. Alicia Compton lived in the downstairs apartment. She heard loud banging noises and angry raised voices coming from the upstairs apartment and called the police. When she heard a door slam upstairs, she came out of her apartment to see what was happening. She saw Katherine coming down the stairs, and Katherine appeared "panicky and upset." Tr. 109. Alicia told Katherine the police were on the way and invited Katherine into her apartment to wait.
 {¶ 5} When the police arrived, Katherine let them into her apartment, where appellant was lying in bed. Steven Brenner, an officer from the Newark Police *Page 3 
Department, responded to the domestic call. He spoke with Katherine and observed she had a cut lip. She did not appear to the officer to be intoxicated. He went to the upstairs apartment where appellant was lying in bed. Appellant told the police he had been asleep for the past two hours. The officer noticed that appellant had a strong odor of alcohol about him, his speech was slurred, and he was argumentative. The police arrested appellant for domestic violence.
 {¶ 6} After appellant was arrested and incarcerated, he contacted Katherine several times by phone from the jail. Appellant implored Katherine to go to the prosecutor and the arresting officer and try to get the charges dropped, and they discussed how Katherine could dodge a subpoena to testify against him in front of the grand jury. Appellant repeatedly maintained that he loved Katherine, and she agreed to attempt to get the charges dropped and to try to avoid testifying before the grand jury.
 {¶ 7} On July 9, 2007, appellant was indicted by the Licking County Grand Jury on one count of domestic violence in violation of R.C. 2919.25. The indictment charged the offense as a felony of the third degree based on two prior domestic violence convictions.
 {¶ 8} On December 11, 2007, the matter proceeded to a jury trial. Prior to the presentation of evidence, the parties stipulated to appellant's prior domestic violence convictions. The stipulation was read into the record before the jury at the close of the State's case.
 {¶ 9} Appellant testified on his own behalf. According to appellant, on June 25, 2007, he arrived home from a physical examination for his job to find Katherine cooking dinner. She had called him earlier to ask if he wanted fried potatoes or mashed *Page 4 
potatoes, and he had responded that he wanted fried potatoes because they had mashed potatoes the day before. When he left for the physical a few hours earlier, there were 5 or 6 beers in the refrigerator. He testified that when he returned home they were all gone. Appellant and Katherine went to the "Quick and Cold" to buy a 24-case of beer.
 {¶ 10} Appellant testified that he and Katherine had a good time that evening dancing, eating and drinking beer. He testified that Katherine "was just calling me goofy, you know, asshole and stuff like that" and they were "hugging one another and things like that." Tr. 142.
 {¶ 11} Appellant testified that things changed when Katherine asked him for $3 to buy drugs. When he refused to give her the money, she "went off," and called him "all kinds of bitches." Tr. 143. He went to his niece's apartment for 45 minutes to an hour to allow Katherine to cool off. He testified that when he returned to the apartment, Katherine dumped a can of beer on his head and hit him with the can. He rinsed the beer out of his hair and then went into the spare bedroom for a dry pair of boxer shorts.
 {¶ 12} When he went into their bedroom, Katherine was watching the Cosby Show. He said to her, "Man, you know how bad I hate that shit." Tr. 148. At that point, appellant claimed Katherine started to hit him in the face and rib cage. He stated he screamed at her, "What the hell is wrong with you?" Tr. 149. He testified that "out of the clear blue" she grabbed her face and ran out of the house. T.149. He went back to bed until the police woke him up around 12:03 A.M. and told him he was being arrested for domestic violence. *Page 5 
 {¶ 13} Appellant admitted calling Katherine from the jail and trying to convince her to not cooperate with the instant prosecution. He stated he was charged with domestic violence in 1996 with his ex-wife after a verbal conflict and was charged with domestic violence in 2005 after an argument with Katherine over drugs. He testified that he called her repeatedly from jail because he loved her more than anything in the world. Appellant testified concerning his reason for making the phone calls, "You know, I'm a man, you know, and Kathy is my weakest link and I — you know, it might not have been the right thing to do, it might not have been the smart thing to do, but, like I say, I love her. Tr. 153.
 {¶ 14} After the presentation of evidence, the jury convicted appellant as charged. The court sentenced him to three years incarceration.
 {¶ 15} Appellant appeals his conviction and sentence setting forth the following assignments of error:
 {¶ 16} "I. APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.
 {¶ 17} "II. APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 I {¶ 18} In the first assignment of error, appellant argues he was denied effective assistance of counsel. Specifically, appellant argues counsel was ineffective for five reasons: 1) counsel failed to object to leading questions by the prosecutor, 2) counsel failed to object to testimony from the victim concerning past acts of violence by appellant, 3) counsel failed to object to the use of a redacted tape of the phone calls appellant made to the victim from the jail, 4) counsel failed to object to the use of *Page 6 
photographs when the officer who testified to their authenticity did not take them, and 5) counsel failed to object to the prosecutor's comments on hearsay evidence during closing argument.
 {¶ 19} A properly licensed attorney is presumed competent. State v.Hamblin (1988), 37 Ohio St.3d 153, 524 N.E.2d 476. Therefore, in order to prevail on a claim of ineffective assistance of counsel, appellant must show counsel's performance fell below an objective standard of reasonable representation and but for counsel's error, the result of the proceedings would have been different. In other words, appellant must show that counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136.
 {¶ 20} When examining counsel's trial strategy, reviewing courts must not use hindsight and must bear in mind that different trial counsel will often defend the same case in different manners.Strickland, supra at 689; State v. Keenan, 81 Ohio St.3d 133, 152,1998-Ohio-459, 689 N.E.2d 929. For these reasons, ineffective assistance of counsel claims may not be based upon debatable strategic and tactical decisions. State v. Phillips, 74 Ohio St.3d 72, 85, 656 N.E.2d 643,1995-Ohio-171.
 {¶ 21} In this assignment of error, appellant first argues that counsel failed to object to the State's use of leading questions. Appellant argues that the prosecutor led witnesses throughout the trial and points specifically to three specific instances during the victim's testimony:
 {¶ 22} "Q: And you have an upstairs apartment? *Page 7 
 {¶ 23} "A: Yes.
 {¶ 24} "Q: Consequently there must be a downstairs apartment.
 {¶ 25} "A: Yes." Tr. 67-68.
 {¶ 26} "Q: At one point the Defendant told you to tell people you just wanted him out of the house for the night. Did you make this up just so he would get out of the house for the night?
 {¶ 27} "A: No, I didn't, but I didn't know that it was going to be a domestic violence charge either." Tr. 83.
 {¶ 28} "Q: What did Archie tell you would happen if you didn't show up?
 {¶ 29} "A: Nothing.
 {¶ 30} "Q: He told you nothing would happen or he told you nothing about it?
 {¶ 31} "A: That nothing would happen." Tr. 104.
 {¶ 32} We note that when the prosecutor asked the victim a leading question concerning the actual event that precipitated the charge in the instant case, counsel did object:
 {¶ 33} "Q: Okay. Did he strike you at any time that evening?
 {¶ 34} "Ms. Green: Objection.
 {¶ 35} "The Court: Overruled.
 {¶ 36} A: When I come out of the bedroom and I was standing there by the t.v., that's when he smacked me upside of the head." Tr. 73.
 {¶ 37} Evid. R. 611(C) provides that leading questions should not be used on direct examination of a witness except as may be necessary to develop his testimony. *Page 8 
 {¶ 38} It is within the trial court's discretion to allow leading questions on direct examination, and, therefore, the failure to object to leading questions does not usually constitute ineffective assistance of counsel. State v. Skinner, Licking App. No. 2007CA00024,2007-Ohio-6793, ¶ 32 citing State v. Jackson, 92 Ohio St.3d 436, 449,2001-Ohio-1266. The failure to object is not a per se indicator of ineffective assistance of counsel because sound trial strategy might well have been to not interrupt the proceedings. Id., citing State v.Gumm (1995), 73 Ohio St.3d 413.
 {¶ 39} In the case sub judice, appellant has not demonstrated that had counsel objected, the court would have sustained the objection. Most of the questions pointed to by appellant in his brief to establish his claim relate to issues that are not in dispute and/or relate to the background of the case, such as whether there was a downstairs apartment in the building. As noted above, appellant's counsel did object when the prosecutor asked a leading question concerning whether appellant hit her, and the objection was overruled.
 {¶ 40} The court in its discretion could have found leading questions were necessary under Evid. R. 611(C) to develop the victim's testimony. While Katherine was not called as a hostile witness and the state did not seek to have her declared a hostile witness, the tapes of the phone calls appellant made from the jail clearly reflect that she intended to avoid testifying against him, and she testified at trial that she had ignored stickers on her door concerning her subpoena to testify. She didn't answer the door three or four times, and she did not want to be there on the day she testified at trial. Tr. 89-90. *Page 9 
 {¶ 41} Appellant next argues that counsel erred in failing to object to a question and response by the victim which tended to indicate the couple had prior incidents of domestic violence. The prosecutor questioned Katherine concerning one of the phone conversations with appellant while he was in jail:
 {¶ 42} "Q: You sounded angry at the beginning of that call when you were talking about what happened. Why were you mad?
 {¶ 43} "A: Because every time this happens, he tries to put it on me like it's my fault.
 {¶ 44} "Q: Let's just focus on what happened at this time.
 {¶ 45} "A: Yes. Okay." Tr. 81.
 {¶ 46} Prior to trial and in the jury's presence, appellant stipulated to having two prior convictions for domestic violence. Appellant also testified that one of the prior convictions involved the victim, stating, "The one — the one in `05, I mean it's basically right where we're about here today. It was over dope. She couldn't get the dope man to come to the house. She got mad . . ." Tr. 155. Therefore, the jury was aware by appellant's own admission of at least one prior incident between these two parties in which he blamed Katherine for the incident. Further, the prosecutor quickly focused Katherine's attention back to the incident at issue in this case. Appellant has not demonstrated that had this testimony been stricken, the result of the proceeding would have been different.
 {¶ 47} Appellant argues counsel was ineffective for failing to object to the introduction of Exhibit 4, the redacted tape of the telephone conversations, thereby permitting the exclusion of exculpatory information. However, the record indicates the *Page 10 
tape was redacted to exclude information about appellant's prior bad acts and to eliminate irrelevant information. Tr. 50-51. Prior to the presentation of evidence, the prosecutor advised the court that she intended to introduce eight telephone calls between the defendant and the victim made from the jail. The State represented to the court that in many of the calls the parties discussed appellant's probation status regarding the prior conviction and appellant's prison record. Tr. 50. The State advised that these references had been deleted (i.e. redacted) from the recordings. The State also indicated that the parties had stipulated to the tape being played before the jury as redacted. T.50. The record reflected that the calls had been provided to appellant's counsel in discovery, and appellant's counsel represented to the court that she had not yet reviewed the tape as redacted but intended to do so over lunch. Tr. 51. Appellant failed to establish how the redacted information would have been exculpatory, but makes a speculative assertion that evidence which was redacted from the tape might have been exculpatory. Because we have only the redacted tape in the record on appeal, we cannot find that exculpatory information was redacted from the tape and that appellant's counsel, who according to the record was provided with the tapes of the phone calls in their unredacted state in discovery, was ineffective in stipulating to its admission at trial.
 {¶ 48} Appellant next argues counsel was ineffective for failing to object to the introduction of photographs of the victim's injuries. Essentially, appellant argues that the testifying officer did not take the photographs and, therefore, could not provide proper authentication for admission. We disagree. *Page 11 
 {¶ 49} "To authenticate photographs, there is no need to call the individual who took the photographs. A witness with personal knowledge of the subject of the photograph may authenticate it by testifying that the photograph fairly and accurately depicts the subject at the time the photographs were taken." State v. Hannah (1978), 54 Ohio St.2d 84, 88,374 N.E.2d 1359.
 {¶ 50} In this case, the responding officer testified that he observed the victim's injuries on the night in question, and the pictures were true and accurate reflections of the victim as he saw her that evening. Tr. 116-117. Consequently, there was no legal basis for an objection to the admissibility of the photographs, and counsel was not ineffective for failing to object.
 {¶ 51} Finally, appellant argues counsel was ineffective for failing to object to the prosecutor's comments on hearsay evidence in the State's closing argument. In his brief, appellant cites us to page 166, line 22 of the transcript, which is not closing argument. Rather, at that point in the transcript, the prosecutor is cross-examining appellant concerning the phone calls from the jail. The prosecutor asks appellant if in that first phone call, when he told Katherine that he didn't do anything, she said, "[Y]ou grabbed me by my face and you slapped me upside the head." Tr. 166. She continues to cross-examine appellant concerning this conversation because appellant responded on the phone that maybe he recalled grabbing Kathy, but he claimed at trial he was making that up to appease her because he loves her. Tr. 167.
 {¶ 52} The parties stipulated to the admission of the tape into evidence. Appellant did not object that it contained hearsay, nor does he now claim counsel was ineffective for failing to object on the basis that it contains hearsay. Once the tape was *Page 12 
properly admitted into evidence, the state was entitled to use the tape in cross-examining appellant about the conversation in the jail.
 {¶ 53} In closing, the State argued, "Her story here on the stand was the same as it was in those jail calls. You came into the bedroom, you called me a very bad name, you grabbed me by the face, and when I was leaving you slapped me upside the head." Tr. 178. During the trial, the victim gave the same testimony before the jury, and the State was arguing that her testimony was consistent with what she told appellant when he was in jail. Again, because appellant stipulated to the admission of the tape, the prosecutor could comment on the tape in closing argument. Further, pursuant to Evid. R. 801(D)(1)(b), a statement is not hearsay if the declarant testifies at the trial and is subject to cross-examination concerning the statement, and the statement is consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive. Throughout the trial, appellant claimed that Katherine lied about what happened on the night in question, because she was angry with him for not giving her money to buy drugs. Thus, the prior consistent statement was admissible to rebut appellant's claims that she lied. Therefore, we fail to find counsel ineffective for failing to object.
 {¶ 54} For the reasons stated, appellant's first assignment of error is not well taken and is hereby overruled.
 II {¶ 55} In the second assignment of error, appellant argues the verdict is against the manifest weight of the evidence. We disagree. *Page 13 
 {¶ 56} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a "thirteenth juror." Under this standard of review, the appellate court weighs the evidence in order to determine whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541. However, the appellate court must bear in mind the trier of fact's superior, first-hand perspective in judging the demeanor and credibility of witnesses. See State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. The power to reverse on "manifest weight" grounds should only be used in exceptional circumstances, when "the evidence weighs heavily against the conviction." Thompkins, at 387, 678 N.E.2d 541.
 {¶ 57} The elements of domestic violence pertinent to this case are as follows:
 {¶ 58} "(A) No person shall knowingly cause or attempt to cause harm to a family or household member." R.C. 2919.25(A).
 {¶ 59} "If the offender had previously pleaded guilty to or been convicted of two or more offenses of domestic violence * * * a violation of division (A) * * * is a felony of the third degree * * *." R.C. 2919.25(D)(4).
 {¶ 60} "As used in this section and sections 2919.251 and 2919.26
Revised Code:
 {¶ 61} "(1) Family or household member means any of the following:
 {¶ 62} "(a) Any of the following who is residing or had resided with the offender:
 {¶ 63} "(i) A spouse, a person living as a spouse, or a former spouse of the offender . . . R.C. 2914.25(F)(1). *Page 14 
 {¶ 64} "(2) Person living as a spouse means a person who is living or had lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question."
 {¶ 65} In the case sub judice, the victim testified she and appellant had lived together for four years, essentially as husband and wife. She stated appellant got upset that she was watching the Cosby show in the bedroom. She stated while she was lying in bed appellant got on top of her and squeezed her face. She testified that she left the bedroom and appellant followed. She further testified that appellant slapped her "upside the head" in the living room. She testified that her lip was swollen. Furthermore, the responding officer observed that the victim had a cut lip.
 {¶ 66} The downstairs neighbor testified that she heard loud noises in appellant's apartment and called the police. The neighbor also observed that the victim was upset when the victim exited her apartment.
 {¶ 67} Appellant stipulated to having been convicted of two prior offenses of domestic violence including one offense involving the victim.
 {¶ 68} From this evidence, the jury could have found appellant guilty of domestic violence.
 {¶ 69} Appellant testified at trial and denied committing the offense in the instant case. According to appellant, he had an argument with the victim over money she wanted him to give her for drugs, and he left the apartment to allow her to cool off. He testified that when he returned, she dumped a can of beer on him. He testified that when he complained about her watching the Cosby show, she began to hit him. He *Page 15 
testified that she grabbed her own face "out of the clear blue" and ran out of the apartment.
 {¶ 70} This case came down to the credibility of the victim, who maintained that she loved appellant and did not want to testify against him, and appellant. The jury was in a superior position to this Court to judge the credibility of witnesses. We do not find that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
 {¶ 71} Accordingly, appellant's second assignment of error is not well taken and is hereby overruled.
 {¶ 72} The judgment of the Licking County Court of Common Pleas is hereby affirmed.
Edwards, J. Wise, P.J. and Delaney, J. concur *Page 16 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Licking County Court of Common Pleas is affirmed. Costs assessed to appellant. *Page 1