[Cite as *State v. Ward*, 2012-Ohio-4807.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  | : | JUDGES: |
| STATE OF OHIO | : | William B. Hoffman, P.J. |
|  | : | Sheila G. Farmer, J. |
| Plaintiff-Appellee | : | Julie A. Edwards, J. |
|  | : |  |
| -vs- | : | Case No. 2011-CA-100 |
|  | : |  |
|  | : |  |
| JOSEPH WARD, III | : | O P I N I O N |
|  |  |  |
| Defendant-Appellant |  |  |

CHARACTER OF PROCEEDING:          Criminal Appeal from Richland
                                  County Court of Common Pleas Case
                                  No. 2010-CR-0896H

JUDGMENT:                          Affirmed

DATE OF JUDGMENT ENTRY:            October 12, 2012

APPEARANCES:

For Plaintiff-Appellee                   For Defendant-Appellant

JAMES J. MAYER, JR.                      JEFFEREY R. STIFFLER
Prosecuting Attorney                     Badnell & Dick Co., L.P.A.
Richland County, Ohio                    21 North Walnut Street
                                         Mansfield, Ohio  44902
BY: JOHN C. NIEFT
Assistant Prosecuting Attorney
38 South Park Street
Mansfield, Ohio  44902

*Edwards, J.*

{¶1} Appellant, Joseph Ward, III, appeals a judgment of the Richland County Common Pleas Court convicting him of two counts of having a weapon under disability (R.C. 2923.13(A)(3)) and one count of possession of heroin (R.C. 2925.11(A)). Appellee is the State of Ohio.

<u>STATEMENT OF FACTS AND CASE</u>

{¶2} On December 3, 2010, Richland County Dispatch received two 911 calls from 244 Remy Avenue in Mansfield. In the first call, the dispatcher could hear someone crying, and then the call was disconnected. In the second call, a person who was crying said that someone was trying to kill her, and the call then disconnected.

{¶3} Ruth Bond, who had an on and off relationship with appellant, had a miscarriage earlier in the day. Upset that appellant would not go with her to the emergency room, Bond went out drinking with the father of her six-year-old daughter. She came home and went to bed. She decided that she would go to work the next morning, report the miscarriage to the company nurse and be sent to the hospital from work.

{¶4} When Bond woke up, appellant was hitting and choking her. He checked her phone and then left the room, returning with a pistol. Appellant put the gun to her head and threatened to kill her. She had her cell phone in bed with her and called 911 from her home at 244 Remy Avenue.

{¶5} Mansfield police officers responded to the call. After several minutes of knocking, Bond answered the door. The officers noted that she was sobbing and had a scratch and redness on her neck. Bond told officers that appellant had threatened her

with a handgun.  Officers located a loaded handgun in the bedroom closet, which Bond identified as belonging to appellant.  She also told police that appellant had a rifle under the basement stairs.  Officers located an assault-type rifle, where Bond had indicated they would find it, with a collapsible stock and an empty magazine nearby.  Police found a small bag of marijuana in the living room and asked Bond about the drugs. Bond responded that the marijuana belonged to appellant, and he had heroin in the freezer.  Officers found 3.82 grams of heroin in a plastic container in the freezer. According to Bond, the weapons and the drugs belonged to appellant.  Appellant was under disability from owning a firearm due to a previous conviction for drug trafficking.

**{¶6}**  Bond contacted the Mansfield Police on December 9, 2010, stating that she wanted to recant her statements regarding domestic violence and appellant's ownership of the weapons and drugs; however, she never appeared at the station to make an official statement. She did later sign a notarized statement recanting her statements to the police and sent a letter to appellant apologizing for lying to the police.

**{¶7}**  Appellant was indicted for two counts of weapons under disability and one count of possession of heroin.  Before the grand jury, Bond testified that she could not remember any of the events of December 3, 2010, because she was drunk.

**{¶8}**  The case proceeded to jury trial.  A hearing was held out of the presence of the jury to determine whether Bond would testify.  Bond was represented by counsel. The State granted her immunity for her testimony except for a misdemeanor charge of permitting drug abuse.  Bond did not testify during this hearing that she lied when she told police the items belonged to appellant.  However, she was afraid to testify because she feared for her safety and the safety of her kids.  She said she would not be willing to

testify if she could be assured of their safety because she had "watched too many Lifetime movies where it doesn't work." Tr. 93.

{¶9} Bond testified at trial that the truth is that the drugs and guns belonged to appellant. She testified that she recanted her story later because appellant told her "he needed to have his story be told in a way in which he would not be sent to jail." Tr. 153. She further admitted that in 2008, she paid a $70 fine for falsification when she told police that appellant beat her up, but later told "the victim's advocate lady" that he did not beat her even though he had, in fact, beat her.

{¶10} Appellant was convicted of all three offenses and sentenced to an aggregate term of imprisonment of four years. He assigns three errors on appeal:

{¶11} "I. APPELLANT'S FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL WERE VIOLATED WHEN HE WAS CONVICTED OF TWO COUNTS OF POSSESSING A WEAPON WHILE UNDER DISABILITY AND ONE COUNT OF POSSESSION OF DRUGS WHEN THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE CONVICTIONS.

{¶12} "II. APPELLANT'S CONVICTIONS FOR TWO COUNTS OF POSSESSING A WEAPON WHILE UNDER DISABILITY AND ONE COUNT OF POSSESSION OF DRUGS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND, THUS, HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL WERE VIOLATED AS PROVIDED BY THE UNITED STATES CONSTITUTION AND THE OHIO CONSTITUTION.

**{¶13}** "III. APPELLANT WAS DEPRIVED OF EFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF BOTH HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS, AT THE TRIAL LEVEL."

I, II

**{¶14}** In his first and second assignments of error, appellant argues that the judgment is not supported by sufficient evidence and is against the manifest weight of the evidence.  He argues that the only evidence to show that he possessed the weapons and the heroin was the testimony of Ruth Bond.  He argues her testimony cannot be believed, as she recanted several times before trial.

**{¶15}** In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"  *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).

**{¶16}** An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

**{¶17}** Appellant was convicted of two counts of having a weapon under disability as defined by R.C. 2923.13(A)(3):

**{¶18}** "(A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

**{¶19}** "(3) The person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse."

**{¶20}** He was also convicted of possessing heroin in violation of R.C. 2925.11(A):

**{¶21}** "(A) No person shall knowingly obtain, possess, or use a controlled substance."

**{¶22}** Ruth Bond testified at trial that appellant was living with her on December 3, 2010, and that she had lied when she told the grand jury he was living in Columbus. She identified a letter addressed to appellant at her Mansfield address, and she testified that the male clothing police found in the closet in her home where they found the handgun belonged to appellant. She testified that the guns and the heroin belonged to appellant. She admitted to recanting her testimony before trial, and testified that she did so at appellant's request because she was afraid of him. She testified that he instructed her as to how to write the notarized statement recanting her testimony.

**{¶23}** The State presented the testimony of Michelle Krill, a victim advocate, who testified that it is not uncommon for domestic violence victims to recant, and probably 75-80% of such victims recant over time, not because the allegations are false but because of fear.

**{¶24}** Further, the police officers who responded to the call testified that Bond was visibly shaken and crying when she opened the door. The officers testified that Bond told them at the time that the handgun, rifle and heroin belonged to appellant. They noted that she had been drinking, but did not show signs of being heavily intoxicated.

**{¶25}** This evidence is sufficient, if believed by the jury, to support a finding that guns and the heroin belonged to appellant. Further, we cannot find that the jury lost its way when believing Ruth Bond's trial testimony. The jury was in a better position than this court to view her demeanor, and her trial testimony was the same as her initial statements to the police on December 3, 2010.

**{¶26}** The first and second assignments of error are overruled.

III

**{¶27}** In his third assignment of error, appellant argues that his trial counsel was ineffective.

**{¶28}** A properly licensed attorney is presumed competent. *State v. Hamblin*, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988). Therefore, in order to prevail on a claim of ineffective assistance of counsel, appellant must show counsel's performance fell below an objective standard of reasonable representation and but for counsel's error, the result of the proceedings would have been different. *Strickland v. Washington*, 466

U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).  In other words, appellant must show that counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result.   *Id.*

**{¶29}** Appellant first argues that counsel was ineffective for failing to move for acquittal pursuant to Crim. R. 29(A) because the evidence was insufficient to support a conviction.  As discussed earlier in this opinion, there was sufficient evidence to support a conviction on all three charges.  Therefore, counsel was not ineffective for failing to move for a directed verdict of acquittal on that basis.

**{¶30}** Appellant next argues that counsel failed to object to leading questions asked of Ruth Bond and Officer Loughman.  While appellant cites this court to pages in the transcript where he argues counsel should have objected, he does not direct this court to specific leading questions, nor does he explain how he was prejudiced by such questioning.

**{¶31}** Evid.R. 611(C) provides, "[l]eading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony."   The failure to object to leading questions does not usually constitute ineffective assistance of counsel. *State v. Jackson,* 92 Ohio St.3d 436, 449, 2001-Ohio-1266, 751 N.E.2d 946. The failure to object is not a per se indicator of ineffective assistance of counsel, because sound trial strategy might well have been not to interrupt. *State v. Gumm*, 73 Ohio St.3d 413, 428, 653 N.E.2d 253 (1995).

**{¶32}** Appellant cites this Court to pages 148-149 of the testimony of Ruth Bond. While the State asked leading questions of Bond on these pages, the questions were

used in summarizing her earlier testimony that she had directed the police to the whereabouts of the guns and the heroin which belonged to appellant. Appellant argues that the prosecutor asked leading questions of Officer Loughman on transcript page 195; however, upon examination of that page we find no leading questions. We cannot find that counsel's failure to object to the testimony on the pages cited by appellant constituted ineffective assistance, as it may have been sound strategy to not interrupt and appellant has not demonstrated prejudice.

{¶33} Appellant also argues that counsel did not object to questions that required hearsay answers at pages 123, 131 and 199 of the transcript. In his brief, appellant does not point to specific questions, does not tell this Court which witness was testifying, and does not explain how he was prejudiced by the admission of hearsay. He merely makes a conclusory statement that counsel failed to object to questions that required hearsay answers.

{¶34} Hearsay is defined by Evid. R. 801(C) as a statement, other than one made by the declarant while testifying at trial, offered to prove the truth of the matter asserted in the statement.

{¶35} At pages 123 and 131 of the transcript, the victim advocate Michelle Krille testified as to what Bond told her over the phone, including her fear that appellant would kill her and that she didn't care if she was charged with falsification. These statements were not offered to prove the truth of the matter asserted, but were offered to show Bond's state of mind at the time she recanted her testimony. Further, Bond testified as to these statements at trial and was subject to cross-examination.

**{¶36}** At page 199 of the transcript, Officer Loughman testified that when he asked Bond to sign a domestic violence affidavit, she replied that if she signed anything, appellant would kill her. Again, this was not offered to prove that appellant was going to kill her, but was offered to show her state of mind and explain why she was uncooperative with the police.

**{¶37}** Appellant has not demonstrated that counsel was ineffective for failing to object to hearsay.

**{¶38}** Appellant next argues that counsel failed to elaborate on the fact that Bond had been threatened with felony charges if she failed to testify, that she had previously been charged with falsification and that there were discrepancies between her grand jury testimony and her trial testimony. This argument is without merit. Counsel cross-examined Bond extensively about possible felony charges, her prior falsification charge, her grand jury testimony which she stated at trial was false, her notarized statement recanting her testimony and her letter to appellant claiming she lied about the guns and heroin belonging to him. The focus of counsel's cross-examination of Ruth Bond was her credibility.

**{¶39}** Finally, appellant argues that counsel should have objected to the chain of custody of the evidence. Appellant concedes that "[a]s there were no motions to suppress or motions in limine filed by Appellant's trial counsel, the record on appeal is absent of these possible issues." Brief of appellant, page 12. The record does not support appellant's claim that there were potential problems with the chain of custody. Appellant therefore cannot demonstrate from the record that counsel was ineffective for failing to object to the chain of custody.

**{¶40}** The third assignment of error is overruled.

**{¶41}** The judgment of the Richland County Common Pleas Court is affirmed.

By: Edwards, J.

Hoffman, P.J. and

Farmer, J. concur

_____

_____

_____

JUDGES

JAE/r0725

[Cite as *State v. Ward*, 2012-Ohio-4807.]

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| JOSEPH WARD, III | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 2011-CA-100 |

    For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Richland County Court of Common Pleas is affirmed.  Costs assessed to appellant.


_____


_____


_____

JUDGES