[Cite as *State v. Gaver*, 2016-Ohio-4621.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case No. 15CA61 |
| | : | |
| ADRIAN L. GAVER | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Richland County Court
of Common Pleas, Case No. 2015 CR
0318 D


JUDGMENT:                         AFFIRMED


DATE OF JUDGMENT ENTRY:           June 20, 2016


APPEARANCES:

For Plaintiff-Appellee:                      For Defendant-Appellant:

BAMBI COUCH PAGE                             ROBERT GOLDBERGER
RICHLAND CO. PROSECUTOR                      10 West Newlon Place
DANIEL M. ROGERS                             Mansfield, OH 44902
38 S. Park St.
Mansfield, OH 44902

*Delaney, J.*

{¶1} Appellant Adrian L. Gaver appeals from the June 23, 2015 Sentencing Entry of the Richland County Court of Common Pleas. Appellee is the state of Ohio.

## FACTS AND PROCEDURAL HISTORY

{¶2} On April 3, 2015, Billy and Gerald Watson lived together in a house trailer on Spayde Road in Bellville, Richland County, which is within sight of the home of their relatives James and Peggy Watson, also on Spayde Road. Around 3:00 p.m., someone came to the door of the house trailer and asked Billy for directions to I-71. Gerald Watson overheard the conversation and found it strange because the trailer was within a very short distance of I-71.

{¶3} Gerald watched the person return to a dark-colored Pontiac minivan. The minivan proceeded down Spayde Road and pulled in behind James Watson's house. Gerald walked outside and then he heard a loud pounding noise. He ran back to the trailer and called 911. While Gerald was on the phone with 911, he saw the minivan leave the property.

{¶4} The call was dispatched as a possible burglary in progress and law enforcement was on the scene within ten to fifteen minutes.

{¶5} Bellville officer Matthew Corwin observed the dark-colored minivan traveling on Spayde Road approaching State Route 97, about 100 yards from the Watson residence. Corwin stopped the minivan in a restaurant parking lot and apprehended three passengers: driver Adrian Gaver (appellant), Anthony Queen, and Damon Lensman. Officers noted the minivan was "packed from top to bottom" with stolen items, to the extent

there was nowhere to sit in the back seat and the van had to be towed to the Richland County Sheriff's Department to be inventoried.

{¶6} James and Peggy Watson, the homeowners, discovered their back door had been kicked in. In the kitchen, someone had gone through containers of prescription medication and taken Percocet (oxycodone) prescribed for their son's wisdom-tooth extraction. The master bedroom was "ransacked." Drawers were pulled out, clothing was scattered everywhere, and dressers and jewelry boxes were missing. The Watsons noted they were missing a .38 Rossi revolver, two television sets, the Percocet, miscellaneous jewelry, and personal documents including utility bills and bank deposit slips.

{¶7} All of these missing items were discovered in the Pontiac minivan driven by appellant and were identified as items belonging to the Watsons.

{¶8} Appellant's accomplices, Anthony Queen and Damon Lensman, testified for appellee at trial. The two said they asked appellant to drive them around to look for "random nice-looking" houses to burglarize where no one was home. They intended to steal items to exchange for drugs in Columbus. On Spayde Road, someone was home at the first target so they proceeded to the James Watson residence. Lensman kicked in the door and he and Queen went back and forth to the residence several times to carry out anything of value they could grab. Appellant remained in the minivan as the driver with instructions to honk if he saw anyone coming.

{¶9} Appellant did not call any witnesses or present any evidence on his own behalf.

{¶10} Appellant was charged by indictment with one count of burglary pursuant to 2911.12(A)(2), a felony of the second degree; one count of theft of a dangerous drug pursuant to R.C. 2913.02(A)(1) and (B)(6), a felony of the fourth degree; one count of grand theft of a firearm pursuant to R.C. 2913.02(A)(1) and (B)(4), a felony of the third degree; and one count of aggravated possession of drugs pursuant to R.C. 2925.11(A) and (C)(1)(a), a felony of the fifth degree.

{¶11} Appellant entered pleas of not guilty and the case proceeded to trial by jury. Appellant was found guilty as charged. The trial court found the allied offenses merged for purposes of sentencing and appellee elected to sentence upon the count of burglary. The trial court imposed a prison term of seven years.

{¶12} Appellant now appeals from the judgment entry of his conviction and sentence.

{¶13} Appellant raises one assignment of error:

## ASSIGNMENT OF ERROR

{¶14} "I. APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL REQUIRING REVERSAL OF HIS CONVICTION."

## ANALYSIS

{¶15} In his sole assignment of error, appellant argues he received ineffective assistance of trial counsel because counsel failed to question the chain of custody of the oxycodone pills and failed to object to leading questions by appellee. We disagree.

{¶16} To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. *See*, *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). In assessing such claims,

"a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158 (1955).

{¶17} "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland,* 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690.

{¶18} Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

{¶19} Appellant first argues he received ineffective assistance of trial counsel because counsel did not question the chain of custody of appellee's Exhibit 27, which contained three oxycodone pills and a metal spoon with morphine residue on it.  We note appellant fails to specify any evidence that trial counsel should have presented that would have undermined the chain of custody.  See, *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 345.  In establishing the chain of custody of physical evidence, the state is not required to negate all possibilities of substitution or tampering but need only establish that it is reasonably certain that substitutions, alterations or tampering did not occur.  *State v. Williams*, 5th Dist. Richland No. CA-2900, 1992 WL 100382, *1 (May

4, 1992), citing *City of Avon Lake v. Anderson*, 10 Ohio App.3d 297, 462 N.E.2d 188 (9th Dist.1983), paragraph one of the syllabus.

{¶20} Appellant contends appellee failed to establish the chain of custody for the pills between the time they were seized and when they were taken to the lab. See, *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 212. In support of his argument, appellant highlights portions of two officers' testimony purportedly demonstrating appellee didn't establish the pills came from the Watson house. In light of the context of the entire case, however, appellee demonstrated Percocet was taken from the Watson residence; Percocet is another name for oxycodone; Queen admittedly took prescription pills from the house; and pills were found in the minivan. Appellant's argument at trial was that he remained ignorant of the accomplices' plan to burglarize homes and played no part therein, so any issue of chain of custody of the pills would have been irrelevant. Counsel's action appears to have been a tactical decision because nothing in the record indicates any problem with the chain of custody and given the strong presumption that counsel's performance constituted reasonable assistance, this claim is rejected. *Lang*, supra, 2011-Ohio-4215 at ¶ 213, citing *Bradley,* supra, 42 Ohio St.3d at 144.

{¶21} Finally, appellant argues defense trial counsel was ineffective in failing to object to leading questions asked of accomplice Anthony Queen. Appellant points to only one such question ["So [appellant] told you he wanted to go with you and do this at the houses?"] which he describes as "fatal" to the defense because Lensman later testified he didn't know if appellant was aware of the plan to burglarize houses or not. We disagree with appellant's characterization because of the overwhelming evidence that appellant

aided and abetted the burglary regardless of whether the jury believed the accomplices' testimony. Appellant initially attempted to evade Corwin during the traffic stop of the van; he waited outside while the accomplices kicked in the door and made repeated trips to the van with stolen items from the house; and several witnesses testified the minivan was so stuffed with stolen items that there was only room to sit in the front seat.

{¶22} Moreover, we cannot say that trial counsel's failure to object to the question fell below an objective standard of reasonable representation. *State v. Ward*, 5th Dist. Richland No. 2011-CA-100, 2012-Ohio-4807, ¶ 30; see also, *State v. McCoy*, 5th Dist. Richland No. 2005-CA-0025, 2006-Ohio-1320; *State v. Rogers*, 5th Dist. Licking No. 07-CA-152, 2009-Ohio-1956. Evid.R. 611(C) provides, "[l]eading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony." The failure to object to leading questions does not usually constitute ineffective assistance of counsel. *State v. Jackson,* 92 Ohio St.3d 436, 449, 2001–Ohio–1266, 751 N.E.2d 946. The failure to object is not a per se indicator of ineffective assistance of counsel because sound trial strategy might well have been not to interrupt. *State v. Gumm,* 73 Ohio St.3d 413, 428, 653 N.E.2d 253 (1995).

{¶23} Appellant has not demonstrated that any claimed deficiencies of trial counsel created "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Jackson*, supra, 92 Ohio St.3d at 449, citing *Strickland,* 466 U.S. at 694. Appellant's sole assignment of error is overruled.

**CONCLUSION**

{¶24} Appellant's sole assignment of error is overruled and the judgment of the Richland County Court of Common Pleas is affirmed.

By: Delaney, J. and

Hoffman, P.J.

Baldwin, J., concur.