[Cite as *State v. Jackson*, 2019-Ohio-4995.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 18AP-758 |
| v. | : | (C.P.C. No. 97CR-1902) |
| Kareem M. Jackson, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 5, 2019

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Steven L. Taylor*, for appellee. **Argued:** *Steven L. Taylor.*

**On brief:** *Carpenter Lipps & Leland LLP,* and *Kort Gatterdam*, for appellant. **Argued:** *Kort Gatterdam.*

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Defendant-appellant, Kareem M. Jackson, appeals from a judgment of the Franklin County Court of Common Pleas denying his second petition for postconviction relief. For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} Jackson was indicted in 1997 on six counts of aggravated murder with death penalty specifications and firearm specifications, related to the killings of Antorio Hunter and Terrance Walker. Jackson was also indicted on four counts of kidnapping with firearm specifications and four counts of aggravated robbery with firearm specifications, related to Hunter, Walker, and two other victims, Nikki Long and Becky Lewis, and one count of felonious assault with a firearm specification related to Lewis. The trial court dismissed the aggravated robbery charge related to Lewis and the case proceeded to a jury trial on all

remaining charges. The facts of the case were fully detailed by the Supreme Court of Ohio in *State v. Jackson*, 92 Ohio St.3d 436, 438 (2001) ("*Jackson I*") and will only be briefly summarized below as is necessary for our review.

{¶ 3} The evidence at trial indicated that Jackson, Michael Patterson, Derrick Boone, and a man identified as "Little Bee" planned to rob an apartment where drugs were being sold. Jackson and Little Bee planned to enter the apartment first and buy drugs. Patterson and Boone would then enter the apartment, and the four men would commit the robbery. Malaika Williamson drove the four men to the apartment. *Id.* When Jackson and the others arrived at the apartment, Hunter, Walker, Long, and Lewis were present. Boone testified at trial that, as planned, after Jackson and Little Bee purchased marijuana, Boone and Patterson burst into the apartment with shotguns. After the men searched the apartment for drugs and money, Patterson and Little Bee left the apartment. At that point, Long and Lewis were located in the kitchen of the apartment, while Jackson and Boone were in the living room with Hunter and Walker, who had been told to lie on the floor. Boone testified Jackson stated he had to kill Hunter and Walker because they recognized him and knew his name. Boone stated that Jackson shot Hunter and Walker in the head with a handgun, first placing a pillow over each man's head before firing. Boone and Jackson then joined Patterson and Little Bee in the car and Williamson drove the men back to her apartment. Long and Lewis then fled the apartment and called the police.

{¶ 4} Long gave a description of Boone to police and a composite portrait was created and distributed to the sheriff's department and the media. Shortly after the sketch was released, Boone turned himself in to the sheriff's department. Boone made a statement implicating appellant in the shooting. Lewis subsequently identified a photo of appellant as the man who had a handgun during the robbery. Lewis also testified at trial that Jackson was the only individual she saw with a handgun.

{¶ 5} Williamson testified she drove Jackson, Boone, Patterson, and Little Bee to the apartment where the robbery occurred and drove them away afterward. Williamson testified that when she picked up Jackson and Boone prior to the robbery they placed two long guns in the trunk of her car. When the men were at Williamson's home prior to the robbery, she also saw both Jackson and Little Bee with handguns. Williamson testified that after the robbery, Jackson placed a handgun in a closet at her home. She also stated she

had previously seen Jackson with that same handgun. Police later retrieved the handgun when a sheriff's deputy, posing as Jackson's uncle, went to Williamson's apartment with Boone and told Williamson the gun belonged to the "uncle." The handgun recovered from Williamson's apartment was tested and found to have fired the bullets retrieved from Hunter. Although the gun could not be conclusively matched to the bullet retrieved from Walker, the bullet was of the same caliber and possessed some characteristics matching the gun. Police also searched the apartment Jackson shared with his girlfriend, Ivana King, and retrieved a shotgun and two rifles. When police interviewed King, she stated Jackson told her he had "done two people," meaning that he had killed two people. At trial, King testified she did not remember having that conversation with Jackson, but that to the best of her knowledge she told police the truth when she was interviewed.

{¶ 6} The jury found Jackson guilty on all charges and recommended the death sentence. *Jackson I* at 438. The trial court accepted this recommendation and sentenced Jackson to death. *Id.*

## A. Direct Appeal

{¶ 7} Jackson filed a direct appeal of his convictions and sentences to the Supreme Court, setting forth 17 propositions of law, which the court reviewed and overruled. *Id.* at 438-51. The court also independently reviewed the death sentences for appropriateness and proportionality. The court concluded the aggravating circumstances outweighed the mitigating factors and the sentences were appropriate and proportionate when compared with similar capital cases. *Id.* at 451-53.

## B. First Postconviction Relief Petition

{¶ 8} Jackson filed a petition for postconviction relief pursuant to R.C. 2953.21 in April 1999, presenting 26 grounds for relief. *State v. Jackson*, 10th Dist. No. 01AP-808, 2002-Ohio-3330. The trial court denied Jackson's petition for postconviction relief without conducting an evidentiary hearing. *Id.* at ¶ 33. On appeal, this court affirmed the trial court's denial of Jackson's first petition for postconviction relief, concluding the trial court did not abuse its discretion by denying the petition without a hearing because the grounds for relief stated in the petition were barred by res judicata or were otherwise insufficient to warrant a hearing. *Id.* at ¶ 40-97.

## C. Federal Habeas Corpus Petition

{¶ 9} Jackson then filed a petition for a writ of habeas corpus in federal court, which was denied. *Jackson v. Bradshaw*, 681 F.3d 753, 756 (6th Cir.2012). Jackson appealed, raising multiple claims. The federal Sixth Circuit Court of Appeals ultimately affirmed the denial of Jackson's petition for a writ of habeas corpus. *Id.* at 780.

**D. Second Postconviction Relief Petition and Other Motions**

{¶ 10} On November 14, 2016, Jackson, represented by the Office of the Ohio Public Defender, filed a second petition for postconviction relief ("Second PCR Petition"). In the Second PCR Petition, Jackson asserted six alleged constitutional errors that constituted grounds for relief. Plaintiff-appellee, State of Ohio, filed an answer indicating it did not oppose an evidentiary hearing on the Second PCR Petition, thus effectively conceding to a hearing, but asserting Jackson would be unable to meet the statutory standard for such a petition.

{¶ 11} On January 11, 2017, Jackson's attorneys also moved for leave to file a motion for a new mitigation trial pursuant to Crim.R. 33 and *Hurst v. Florida*, __ U.S. __, 136 S.Ct. 616 (2016) ("motion for leave to file a *Hurst* motion").[1] The state filed a memorandum in opposition to the motion for leave to file a *Hurst* motion.

{¶ 12} On April 27, 2017, the trial court conducted a status conference and subsequently issued an amended case schedule setting discovery deadlines and scheduling a hearing on the Second PCR Petition for December 14, 2017.

{¶ 13} In June 2017, Jackson's attorneys moved the court for leave to conduct discovery for the evidentiary hearing on the Second PCR Petition, which the state opposed. Four months passed without a ruling on that motion; in October 2017, Jackson's attorneys moved to expedite the court's ruling on the motion for discovery.

{¶ 14} In an entry issued November 7, 2017, a visiting judge sitting by assignment denied the motion for leave to file a *Hurst* motion.

---

[1] The United States Supreme Court held in *Hurst* that Florida's capital sentencing scheme violated the Sixth Amendment because although it allowed the jury to make a recommendation that the death penalty be imposed, it ultimately required the trial judge to independently find and weigh the aggravating and mitigating circumstances before issuing a sentence of death. *Hurst* at 620-22. In his memorandum for leave to file a *Hurst* motion, Jackson suggested that he would argue that under *Hurst* his death sentence violated the Sixth and Fourteenth Amendments to the United States Constitution and that a new mitigation trial was warranted under Crim.R. 33(A).

{¶ 15} On December 1, 2017, that same visiting judge denied Jackson's motion for leave to conduct discovery prior to the December 14, 2017 hearing on the Second PCR Petition.

{¶ 16} On December 6, 2017, Jackson filed an appeal of the trial court's denial of his motion for leave to file a *Hurst* motion. Two days later, Jackson moved to vacate the December 14, 2017 hearing date for the Second PCR Petition, asserting the trial court lacked jurisdiction over the matter while the appeal was pending. Then, on December 12, 2017, the state moved to dismiss the Second PCR Petition, effectively withdrawing its concession to conducting a hearing and arguing the trial court should dismiss the petition without a hearing. The same day, the trial court issued an entry continuing the hearing date, noting the pending appeal and four pending motions.

{¶ 17} On June 14, 2018, this court issued a decision affirming the trial court's denial of Jackson's motion for leave to file a *Hurst* motion. *State v. Jackson*, 10th Dist. No. 17AP-863, 2018-Ohio-2318.

{¶ 18} On September 20, 2018, the trial court conducted a status conference on the case. The following day, without conducting a hearing on the Second PCR Petition, the trial court issued a decision granting the state's motion to dismiss the Second PCR Petition.

## II. Assignments of Error

{¶ 19} Jackson appeals and assigns the following five assignments of error for our review:

> [I.] THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING APPELLANT MEANINGFUL ACCESS TO THE COURT.
>
> [II.] THE TRIAL COURT ABUSED ITS DISCRETION AND DENIED APPELLANT DUE PROCESS BY CANCELING THE EVIDENTIARY HEARING AND RULING ON THE PETITION WITHOUT TAKING NECESSARY EVIDENCE.
>
> [III.] THE TRIAL COURT ERRED IN DENYING APPELLANT'S FIRST, SECOND AND FOURTH GROUNDS FOR RELIEF.
>
> [IV.] BECAUSE IVANA KING SWORE UNDER OATH THAT APPELLANT DID NOT CONFESS AND SHE WAS INTIMIDATED BY POLICE INTO SAYING APPELLANT "CONFESSED" IN AN UNSWORN STATEMENT, THE

TRIAL COURT ERRED IN FINDING APPELLANT'S GROUND FOR RELIEF "SPECULATIVE."

[V.] O.R.C. § 2953.23(A)(1)(b) IS UNCONSTITUTIONAL AS APPLIED TO APPELLANT'S SUCCESSOR POST-CONVICTION PETITION.

## III. Analysis

## A. First Assignment of Error – Denial of Meaningful Access to Court

{¶ 20} Jackson asserts in his first assignment of error the trial court abused its discretion and violated his right to due process by denying meaningful access to the court. Jackson argues his attorneys failed to act in his best interests and the trial court failed to respond to Jackson's complaints regarding his attorneys' actions.[2] Jackson claims the trial court abused its discretion by not conducting a hearing to address his complaints, but ultimately it appears Jackson wanted the trial court to appoint new counsel to represent him. Jackson sent two letters to the trial court in December 2017 advising the court he was unhappy with his attorneys' management of the case and lack of responsiveness to his inquiries. In those letters, Jackson complained his attorneys were not adequately prepared for the hearing on the Second PCR Petition and improperly sought to delay the hearing. Jackson also claimed he only consented to the attempt to file a *Hurst* motion on the belief it would not interfere with the Second PCR Petition. Jackson requested the court appoint different counsel to represent him.

{¶ 21} Postconviction relief proceedings are considered civil in nature, and there is no constitutional right to counsel in state postconviction relief proceedings. *State v. Waddy*, 10th Dist. No. 15AP-397, 2016-Ohio-4911, ¶ 42-43. Ohio law provides a limited statutory right to counsel for an initial timely postconviction relief petition by an indigent criminal defendant sentenced to death. Pursuant to R.C. 2953.21(J), when an indigent defendant sentenced to death intends to file a postconviction relief petition, the trial court is required to appoint counsel to represent the defendant. However, this statutory provision does not extend to successive or untimely postconviction relief petitions under R.C. 2953.23. *Waddy* at ¶ 51; *State v. Conway*, 10th Dist. No. 12AP-412, 2013-Ohio-3741, ¶ 72.

---

[2] Subsequent to the filing of the present appeal, Jackson obtained new counsel and is not represented by the same attorney on appeal as he was in the proceedings below.

Thus, Jackson did not have a constitutional or statutory right to counsel for the Second PCR Petition.

{¶ 22} Jackson argues his attorneys ceased acting as his agents, thereby denying his right to due process and meaningful access to the court, citing *Holland v. Florida*, 560 U.S. 631 (2010). In *Holland*, the defendant, Albert Holland, had been convicted of first-degree murder and sentenced to death. *Holland* at 634. Following an unsuccessful direct appeal of his conviction and sentence, Holland's court-appointed counsel filed a motion for postconviction relief in the state trial court. During the three years that Holland's state postconviction relief petition was pending, Holland wrote multiple letters urging his counsel to ensure that his claims would be preserved for federal habeas corpus review. *Id.* at 636. Despite repeated written requests from Holland, his counsel failed to timely file a federal habeas corpus petition after his state postconviction relief petition was denied. *Id.* at 638. Holland ultimately filed an untimely pro se federal habeas corpus petition upon learning that the Florida Supreme Court had issued a final determination in his postconviction relief petition. *Id.* at 639. The United States Supreme Court held that the relevant statutory limitations period was subject to equitable tolling in extraordinary circumstances and remanded to the Court of Appeals to determine whether the circumstances of the case warranted equitable tolling. *Id.* at 652-54. Justice Alito wrote a separate concurrence in *Holland* noting that Holland argued his attorney essentially abandoned him by almost completely failing to communicate with him or respond to his inquiries for several years. *Id.* at 659.

{¶ 23} Jackson argues his case is analogous to *Holland*, asserting his attorneys effectively abandoned him by disregarding his requests to proceed with the evidentiary hearing on the Second PCR Petition without delay. However, unlike Holland's attorney, who failed to respond to inquiries over a series of years and failed to adequately protect his client's interests, it is clear that in this case Jackson's attorneys were actively pursuing a dual-track strategy involving both a successive petition for postconviction relief and a request for a new mitigation trial. Within the context of the Second PCR Petition, Jackson's attorneys actively sought discovery of matters they argued were relevant to the petition. Although Jackson may not have agreed with his attorneys' dual-track approach, their actions in this case do not constitute the type of abandonment contemplated in *Holland*.

{¶ 24} Under these circumstances, we cannot find the trial court abused its discretion or that Jackson was denied meaningful access to the court. Accordingly, we overrule Jackson's first assignment of error.

**B. Second Assignment of Error – Failure to Conduct Hearing on Petition**

{¶ 25} Jackson argues in his second assignment of error the trial court abused its discretion by canceling the December 14, 2017 evidentiary hearing and ruling on the Second PCR petition without conducting an evidentiary hearing. Jackson asserts the trial court had a statutory duty to ensure the postconviction relief petition contained sufficient evidence to warrant a hearing before granting one; therefore, the court must have implicitly concluded there was sufficient evidence when it scheduled a hearing on the Second PCR Petition. Jackson claims the trial court acted arbitrarily by canceling the hearing because the only change that occurred during the intervening period was the delay created by his attorneys' additional filings.

{¶ 26} R.C. 2953.21(D) provides that "[b]efore granting a hearing on a petition filed under [R.C. 2953.21(A)], the court shall determine whether there are substantive grounds for relief." *See also State v. Cole*, 2 Ohio St.3d 112, 113 (1982) ("Indeed, the trial court has a statutorily imposed duty to ensure that the petitioner adduces sufficient evidence to warrant a hearing."). The Second PCR Petition was filed beyond the time provided in R.C. 2953.21, and it was Jackson's second request for postconviction review; therefore, it was also subject to the requirements of R.C. 2953.23. That statute provides that a court "may not entertain" an untimely or successive postconviction relief petition unless the requirements of R.C. 2953.23(A)(1) or (2) are met. The Supreme Court of Ohio has held that unless the requirements of R.C. 2953.23(A)(1) or (2) are satisfied, a court lacks jurisdiction over a successive postconviction relief petition. *State v. Apanovitch*, 155 Ohio St.3d 358, 2018-Ohio-4744, ¶ 38. *See also State v. Conway*, 10th Dist. No. 17AP-90, 2019-Ohio-382, ¶ 8 ("A trial court lacks subject-matter jurisdiction over an untimely or successive petition for postconviction relief unless the petition satisfies the criteria set forth under R.C. 2953.23(A).").

{¶ 27} Although the circumstances in this case are unusual because the trial court initially scheduled a hearing before later canceling it and denying the Second PCR Petition without a hearing, if the trial court lacked jurisdiction over the Second PCR Petition because

it failed to satisfy the requirements of R.C. 2953.23(A) the court likewise lacked jurisdiction to conduct an evidentiary hearing on that petition. *See State v. Peoples*, 1st Dist. No. C-050620, 2006-Ohio-2614, ¶ 10 ("[T]he purpose of a hearing on a postconviction claim is to aid the court in determining the claim on its merits. It follows that the court need not conduct a hearing on a postconviction claim that the court has no jurisdiction to entertain."). Assuming for purposes of analysis that the trial court initially concluded it had jurisdiction over the Second PCR Petition at the time it scheduled the hearing, the trial court could later reconsider the issue of jurisdiction. *See Amen v. Dearborn*, 718 F.2d 789, 794 (6th Cir.1983) ("[T]he law of the case doctrine does not foreclose reconsideration of subject-matter jurisdiction."). Therefore, we cannot conclude the trial court abused its discretion by reconsidering the jurisdictional issue and canceling the evidentiary hearing based on its conclusion that it lacked jurisdiction over the Second PCR Petition.

{¶ 28} Accordingly, we overrule Jackson's second assignment of error.

## C. Third and Fourth Assignments of Error – Error to Deny Petition

{¶ 29} Having concluded the trial court did not abuse its discretion by canceling the previously scheduled hearing once it determined it lacked jurisdiction over the Second PCR Petition, we turn to the question of whether the trial court erred by concluding it lacked jurisdiction over the petition. The trial court generally held that Jackson failed to establish he was unavoidably prevented from discovering the facts he relied on to obtain relief and that, but for the alleged constitutional errors at trial, no reasonable factfinder would have found him guilty. The court also briefly addressed each of the specific grounds for relief presented in the Second PCR Petition, finding that none of the alleged grounds was sufficient to meet the standard of R.C. 2953.23(A)(1). In his third assignment of error, Jackson asserts the trial court erred by denying the first, second, and fourth grounds for relief presented in his Second PCR Petition. In his fourth assignment of error, Jackson asserts the trial court erred by denying the fifth ground for relief presented in the Second PCR Petition.[3] Because both of these assignments of error involve the trial court's conclusion that Jackson failed to satisfy the requirements of R.C. 2953.23(A)(1), we will address them together.

---

[3] Jackson does not address the trial court's denial of his third or sixth grounds for relief in the Second PCR Petition in his brief on appeal, and appears to have abandoned any appeal of those issues.

{¶ 30} As relevant to the present appeal, R.C. 2953.23(A)(1) provides that a trial court may not entertain an untimely or successive petition for postconviction relief unless both of the following conditions apply:

> (a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

> (b) The petitioner shows by clear and convincing evidence that, but for the constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.

{¶ 31} Because R.C. 2953.23 is jurisdictional, the issue of whether a successive postconviction relief petition satisfies the requirements of R.C. 2953.23(A) is a question of law, which we review de novo. *Apanovitch* at ¶ 24; *Conway* at ¶ 11; *State v. Teitelbaum*, 10th Dist. No. 19AP-137, 2019-Ohio-3175, ¶ 12.

{¶ 32} Jackson asserted in his first ground for relief that the prosecution withheld police reports indicating that Long and Lewis described the probable shooter as being approximately 5'4" tall and heavyset, with a medium complexion. Jackson argued this physical description was inconsistent with his height of 5'8" or 5'9" and dark complexion. Similarly, in his second ground for relief, Jackson asserted that recently discovered materials indicated there were three assailants during the robbery and shooting, rather than four, and that Jackson did not match the physical description of any of the assailants. In his fourth ground for relief, Jackson claimed that evidence not disclosed to the defense indicated Little Bee had a motive for the killings—i.e., to send a message to a rival drug dealer. Finally, in his fifth ground for relief, Jackson asserted King had recanted a portion of her testimony, stating that Jackson never told her he "done two people," and she only

told police this because she felt intimidated and feared she would be jailed or prevented from going home to her children.

{¶ 33} With respect to the first prong of the R.C. 2953.23(A)(1) test, "[t]he phrase 'unavoidably prevented' in R.C. 2953.23(A)(1)(a) means that a defendant was unaware of those facts and was unable to learn of them through reasonable diligence." *State v. Turner*, 10th Dist. No. 06AP-876, 2007-Ohio-1468, ¶ 11.  The trial court generally found Jackson failed to show he was unavoidably prevented from discovering the facts relied on in his claims for relief in the Second PCR Petition. The court stated the record indicated Jackson's trial counsel was aware of the witness descriptions cited in support of the first ground for relief.  The court further noted with respect to the second ground for relief that the disputed number of robbers was raised at trial.  The court rejected Jackson's claims about Little Bee's purported motive by noting there were testimony and interviews in the record indicating that witnesses referred to Little Bee as a participant in the robbery.  Finally, with respect to the fifth ground for relief, the trial court noted the defense team interviewed King before trial, suggesting that presumably she could have disclosed any untruth in her statement to police at that time.

{¶ 34} We need not decide the question of whether Jackson was unavoidably prevented from discovering the facts upon which he relied in the Second PCR Petition because we conclude the Second PCR Petition fails to satisfy the second prong of the R.C. 2953.23(A)(1) standard. Assuming without deciding that Jackson was unavoidably prevented from discovering the facts upon which he relies, the Second PCR Petition fails to demonstrate by clear and convincing evidence that, but for the alleged errors, no reasonable factfinder would have found him guilty at trial. R.C. 2953.23(A)(1)(b).  The alleged errors claimed in the Second PCR Petition related to the testimony of Long, Lewis, and King, and the theory that Little Bee was the actual shooter. However, the alleged errors cited in the Second PCR Petition, even if proved, would not implicate the *other* evidence identifying Jackson as the shooter—specifically, Boone's direct testimony that Jackson fired the shots that killed Hunter and Walker, and the evidence tying Jackson to the handgun retrieved from Williamson's apartment, which was found to have fired the shots that killed Hunter. That evidence, if found credible by a jury, would have been sufficient to convict Jackson. Therefore, the Second PCR Petition failed to establish that *no reasonable factfinder* could

have found him guilty if the alleged errors had not occurred. The trial court did not err by denying the merits of the Second PCR Petition.

{¶ 35} Accordingly, we overrule Jackson's third and fourth assignments of error.

## D. Fifth Assignment of Error – Error to Deny Constitutional Challenge

{¶ 36} In his fifth assignment of error, Jackson asserts that R.C. 2953.23(A)(1)(b) is unconstitutional as applied to the facts of his case. Although Jackson purports to set forth an "as-applied" challenge to R.C. 2953.23(A)(1)(b) in his fifth assignment of error, several of the arguments contained in his brief assert facial challenges to the statute's constitutionality. Jackson asserts the statute violates the Supremacy Clause of the United States Constitution, the doctrine of separation of powers under the Ohio Constitution, and the "Due Course of Law" and "Open Courts" provisions of Article I, Section 16 of the Ohio Constitution. To the extent Jackson asserts a facial challenge to the statute under these provisions, this court has previously rejected those arguments in other decisions and we are bound by those precedents. *See State v. Conway*, 10th Dist. No. 12AP-412, 2013-Ohio-3741, ¶ 61-62. Similarly, to the extent Jackson seeks to assert an as-applied challenge to the statute, this court has held that "the General Assembly imposed a 'clear and convincing' standard in order to balance the State's need for final judgment against a petitioner's right to challenge his conviction on the basis of constitutional violations." *Id.* at ¶ 63. Thus, the statute is not unconstitutional as applied to Jackson.

{¶ 37} Accordingly, we overrule Jackson's fifth assignment of error.

## IV. Conclusion

{¶ 38} For the foregoing reasons, we overrule Jackson's five assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT, P.J., and SADLER, J., concur.

————————